**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY, KANSAS**

| | | |
|---|---|---|
| SAMANTHA COOK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-02133-KHV-DJW |
| | ) | |
| OLATHE HEALTH SYSTEMS, INC.,et. al. | ) | |
| Defendants | ) | |

**SAMANTHA COOK'S RESPONSE TO**
**DEFENDANT RONALD KARLIN MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, Samantha Cook, by counsel Jeremiah Johnson, and submits the following

response to Defendant Ronald Karlin's Motion for Summary Judgment.  In support of her

response, Ms. Cook states as follows:

   **I.     Overview**

Kansas law does not require that all medical malpractice claims be supported by expert

testimony, in fact, many of the cases cited by Defendant clearly outline circumstances in which

expert testimony is not required.  Kansas has well recognized exceptions to the expert

testimony requirement in medical malpractice actions such as the "common knowledge

exception."

Defendant has attempted to justify his actions in ignoring his duty to seek Plaintiff's

informed consent by incorrectly claiming that he is exempt from establishing informed

consent for the procedures he admits were forced upon the Plaintiff because of the

"emergency exception."  Kansas law makes a claim of an "emergency exception" an affirmative

defense, it does not support Defendant's motion for summary judgment.

Defendant's supplemental motion for summary judgment presents a thinly veiled, but

untimely motion for failure of the Plaintiff to state claim, disguised as a motion for summary

1

judgment.  Notwithstanding the timing of the claim, Defendant is not entitled to summary

judgment regarding Plaintiff's privacy and patient rights claims as genuine issues of material

facts exist to all necessary elements of the relevant complaints.

<u>**RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**</u>

Plaintiff responds to defendants' statement of facts using defendants' paragraph

numbering. Those facts indentified as uncontroverted are deemed so for purposes of this

motion only.  Plaintiff reserves the right to controvert all of these facts at trial.

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. Uncontroverted.

5. Controverted.  This statement is not support by the record.  Defendant's "Exhibit 1"
   was not specifically identified in Defendant's motion and has not been attached to
   Defendant's motion.  Plaintiff was calm at times at Olathe Medical Center, usually when
   police officers were not viewing her partially clothed or participating in medical
   procedures.   During those times, Plaintiff effectively communicated with the various
   hospital employees.  (Davenport testimony; December 22, 2008; page 58; attached as
   Ex. A)[1], (Excerpts of Plaintiff's Olathe Medical Records, Exhibit B).

6. Controverted.  This statement is not support by the record.  Defendant's "Exhibit 1"
   was not specifically identified in Defendant's motion and has not been attached to
   Defendant's motion.  Defendant ordered the testing because the plaintiff was being

---

[1] Excerpts from the transcript of the motion hearing in *State v. Samantha Leigh Cook*, case no.
08CR880, Johnson County District Court, dated December 22, 2008 are attached as Exhibit A.
Plaintiff asks the court to take judicial notice of the contents of the certified transcript.

uncooperative and verbally abusive.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 23).

7. Uncontroverted.

8. Uncontroverted.

9. Uncontroverted.

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

10. Samantha Cook did not consent to any medical procedures, tests, or treatment at the Olathe Medical Center.   (Kibbee testimony; December 22, 2008; pages 13-15, attached as Ex. A); (Cook testimony; July 1, 2009; pages 58-61, attached as Exhibit D)[2].

11. Samantha Cook was held down by police and OMC personnel while her clothes were removed by OMC staff. (Kibbee testimony; December 22, 2008; page 26-27, attached as Ex. A; Smith testimony; December 22, 2008; page 35-36, attached as Ex. A).

12. Samantha Cook was held down by police and OMC staff so that a blood sample could be obtained. (Davenport testimony; December 22, 2008; page 47-48, 55, and 58-59, attached as Ex. A).

13. Samantha Cook's legs were held apart as a catheter was forced into her body. (Davenport testimony; December 22, 2008; page 47-48, 55, and 58-59, attached as Ex. A).

14. Samantha Cook was either in handcuffs, restrained by hospital restraints, or both during the removal of her clothes, the forced blood test, and the forced catheterization. (Davenport testimony; December 22, 2008; pages 55-56, attached as Ex. A).

---

[2] Excerpts from the transcript of the criminal trial in *State v. Samantha Leigh Cook*, case no. 08CR880, Johnson County District Court, dated July 1, 2009 are attached as Exhibit D.  Plaintiff asks the court to take judicial notice of the contents of the certified transcript.

15. At least some OMC personnel understood that non-consensual blood and urine samples were being taken for law enforcement purposes.  (Kansas Bureau of Investigation Laboratory Report containing Nurse Wheeler's signature for blood testing, attached as Ex. E).

16. Although both Defendant Kibbee or Defendant Smith were equipped with "belt audio" recorders, they claim they did not record all of their contact with Plaintiff at OMC. Defendants Kibbee and Smith also utilized separate "belt audio" recorders.  (Kibbee testimony; December 22, 2008; pages 23-24, attached as Ex. A), (Kibbee testimony; June 29, 2009; page 84, attached as Exhibit F)[3]

17. Defendant Karlin's only knowledge of Plaintiff prior to making contact with her was the nurses notes.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 10).

18. Defendant Karlin never spoke to the Defendant police officers regarding the circumstances behind the Plaintiff's alleged behavior.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 14).

19. Defendant Karlin never asked Plaintiff if she wanted to be at the hospital or to receive treatment (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 15).

20. Defendant Karlin never asked Plaintiff whether she wanted the police to be present during any testing or treatments (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 16).

---

[3] Excerpts from the transcript of the criminal trial in *State v. Samantha Leigh Cook*, case no. 08CR880, Johnson County District Court, dated June 29, 2009 are attached as Exhibit F. Plaintiff asks the court to take judicial notice of the contents of the certified transcript.

21. Defendant Karlin never asked Plaintiff whether she wanted her clothing removed (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 16).

22. Defendant Karlin ordered nurses to take Plaintiff's blood and urine. (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 17).

23. Defendant Karlin never requested Plaintiff's consent to perform any testing including the non-consensual blood and urine samples.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 17).

24. Defendant Karlin failed to inquire whether nurses or anyone at the hospital had requested consent to take Plaintiff's blood or urine.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 19).

25. Defendant Karlin did not ask Plaintiff to voluntarily provide blood or urine samples, nor did he provide a less invasive opportunity for Plaintiff to provide urine or blood. (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 30).

26. Defendant Karlin never asked the male police officers to leave the room during Plaintiff's forced cathertization nor did he inquire whether there were female officers available to replace the male officers.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, pages 31-32).

27. Defendant Karlin never asked to speak to Plaintiff without the police present, whether Plaintiff consented to police officers participating in medical procedures, nor did Defendant ask Plaintiff if she wanted the police to be present in her room.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 43).

28. Defendant Karlin admits that an uncooperative patient is not necessarily an incompetent patient.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 50).

29. Defendant Karlin admitted that, under Kansas law, a patient has the right to seek care or not seek care.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 58).

30. Defendant Karlin views police officers holding down patients to facilitate a forcible insertion of a catheter to be acceptable medical treatment.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 36).

31. Other than the initial visit into the Plaintiff's hospital room when Defendant ordered the blood and urine testing, Defendant believes he only visited Plaintiff's room one additional time, to discharge her.  (Exhibit C, excerpts of Deposition transcript of Ronald J. Karlin, M.D., November 15, 2010, page 38).

## II.     Standard of Review

Summary judgment is only proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

 "On a motion for summary judgment under Rule 56, a party moving for summary judgment" has the burden to "demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment beyond a reasonable doubt."  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985) (citing *Brown v. Parker-Hannifin Corp.,* 746 F.2d 1407, 1411 [10[th] Cir. 1984]).  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when 'it is essential to the proper disposition of the claim."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219

6

(10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 [10th Cir. 2001]).

Summary judgment is seldom proper in negligence cases.  *Phillips v. Carson*, 240 Kan. 462,

472, 731 P.2d 820 (1987).

**III.   Defendant's summary judgment motion regarding privacy and patients' rights was waived when Defendant missed the Court's October 15, 2010 deadline for Motions to Dismiss.**

Defendant Karlin has presented a thinly veiled failure to state a claim issue dressed as

a motion for summary judgment.  Thus summary judgment regarding Plaintiff's privacy and

patients' rights claims is not appropriate because Defendant waived this argument when he

missed the Court's October 15, 2010 deadline to file Motions to Dismiss.   Even if Defendant's

motion was timely, Plaintiff has sufficiently pled both issues and there exists genuine issues of

material facts relating to all of the essential elements of both complaints.

Defendant correctly points to the circumstances upon which an invasion of privacy

action can be brought.  An invasion of privacy is actionable where a plaintiff claims "(1) an

unreasonable intrusion upon the seclusion of another; …", among other circumstances.

*Blackwell v. Harris Chemical North America, Inc.*, 11 F. Supp 2d 1302, 1310 (D. Kan. 1998).  The

relevant elements to this cause of action can be found in P.I.K. 4th 127.61, which states:

"The right of privacy is the right to be let alone.
In order to constitute an invasion of the right of privacy, the act must be of such a nature that would cause mental distress or injury to a person having ordinary feelings and intelligence.
The right of privacy is invaded if another:
[**Intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another**, or *(his) (her)* private affairs or concerns **and if the intrusion would be highly offensive to an ordinary person**;]
[Appropriates to *(his) (her)* own use or benefit the name or likeness of another;]
[Publicizes matters of a kind highly offensive to an ordinary man concerning the private life of another;]
[Publicizes matters which places another before the public in a false light of a kind highly offensive to an ordinary person.]" (P.I.K. 4th 123.10, emphasis added).

The required elements for an invasion of privacy claim are established by the record in this case. Defendant ordered medical procedures, including non-consensual blood and urine draws, to be performed on Plaintiff against her wishes. The methods employed to collect these samples, based on Defendant's orders, included Plaintiff being forcibly held down by OMC staff and police so blood could be drawn without her consent, male police officers participating in the removal of her clothing, male police officers viewing her in various states of undress, and male police officers forcibly holding her legs apart while she was sodomized by a catheter. The elements are fully established by the record and through the Plaintiff's pleadings.

Defendant relies on two separate 9th Circuit cases, *United States v. Kincaid*, 379 F.3d 813 (9th Cir. 2004); and *Yin v. California*, 95 F.3d 864 (9th Cir. 1996), to argue that blood and urine tests are not significantly intrusive and are common during a medical examination. This argument does not hold water when weighed against Tenth Circuit precedent.

Further, Defendant's cases are easily distinguished. In both of Defendant's cited cases, the individuals being asked to perform these tests were given an opportunity to refuse the tests. Perhaps just as important, the subjects in both of Defendant's cases were on parole and were post-trial detainees. The United States Supreme Court has stated that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled but only . . . conditional liberty,'" due to the State's interests in reducing recidivism and ensuring the community is not harmed by the probationer's being at large. *Griffin*, 483 U.S. at 874 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972))

In this case, Plaintiff's blood and urine was barbarically taken from her against her will while Plaintiff was in a state of undress and being held down by male police officers. These

circumstances are far from the analysis provided by these inapposite cases from the 9th Circuit where the individuals in those cases where given a clear choice and were not forced to provide such samples, be exposed in front of members of the opposite sex, and the tests were performed in a dignified manner.

The United States Supreme Court has long recognized the right to bodily integrity, *Rochin* v. *California*, 342 U.S. 165 (1952), even going so far as to recognize a right to refuse unwanted lifesaving medical treatment. *Cruzan*, 497 U. S., at 278-279. vb This has been explained to mean *"[A] liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions"* *Cruzan*, 497 U. S., at 279; *id.*, at 287 (O'Connor, J., concurring).

The common law doctrine of informed consent has been viewed by the Supreme Court as generally encompassing the right of a competent individual to refuse medical treatment. 497 U. S., at *Id.*, at 277.  ("[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions.") *See Rutherford v. United States*, 616 F.2d 455 (Tenth Circuit 1980).  ("It is apparent in the context with which we are here concerned that the decision by the patient whether to have a treatment or not is a protected right.") *See also Ferguson v. City of Charleston*, 532 U.S. 67, 76 n.9 (2001) ("we have routinely treated urine screens taken by state agents as searches within the meaning of the Fourth Amendment even though the results were not reported to the police.").

This Plaintiff was forcibly held down so blood could be drawn, members of the opposite sex participated in removing her clothing, and members of the opposite sex forcibly held her legs apart while she was violated by a catheter.  The elements have been established and this cause of action needs to be put in front of the fact finder to determine whether Dr.

Karlin's defenses are valid.  The Defendant is not entitled to summary judgment on the privacy and patient rights claims.

### IV.    Plaintiff's medical negligence claim does not require an expert witnesses designation

Defendant Ronald Karlin is not entitled to summary judgment because Kansas law does not require an expert witness to demonstrate that the Defendant failed to comport with the appropriate standard of care under the circumstances in this case. Kansas law ordinarily requires expert testimony to show that a health care provider has breached the standard of care, *Treaster v. Healthsouth Corp.*, 442 F.Supp 1171, 1180-81 (D. Kan. 2006).  However, a key exception to this rule exists.

#### A.    The Common Knowledge Exception

The common knowledge exception to the expert testimony requirement is well established in Kansas.  Given Defendant Karlin's admissions that he did not make any attempts to ascertain whether Plaintiff consented to any medical procedures, the common knowledge exception clearly applies in this case.

The common knowledge exception applies when the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience. *Schara v. Pleasant Valley Nursing, LLC*, 2009 WL 2195107, *2 (D.Kan. 2009).  See also *Hare v. Wendler*, 263 Kan. 434, 949 P.2d 1141 (1997); *Sharples v. Roberts*, 249 Kan. 286, 292, 816 P.2d 390 (1991); *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988); *McKnight v. St. Francis Hospital and School of Nursing, Inc.*, 224 Kan. 632, 633, 585 P.2d 984 (1978); *Webb v. Lungstrum*, 223 Kan. 487, Syl. 3, 575 P.2d 22 (1978). This exception was recently approved in the update to the Pattern Instructions for Kansas IV ("P.I.K. 4) which was revised in 2011.

The common knowledge exception was recently discussed in *Schara v. Pleasant Valley Nursing, LLC*, 2009 WL 2195107 (D.Kan. 2009).  In that case, Plaintiff failed to disclose expert testimony establishing the standard of care required of the defendant, and the defendant moved for summary judgment.  In *Schara*, the court acknowledged that although expert testimony is generally required, the common knowledge exception is well established by Kansas law.  *Id*. at *2.  The court found that the failure to provide certain medication to prevent a MRSA relapse was straight forward enough for a fact finder to determine whether the Defendant violated their standard of care.  *Id.* at *3.

In fact, the applicable jury instruction regarding the duty of care, P.I.K. 4th 123.10, contains the following notations in large, bold font immediately below the instruction:

> "[The above rule is limited to those matters clearly within the field of medical science. If what was done or not done in the treatment of a patient is within the common everyday knowledge of persons generally, such facts may be established from the general circumstances as shown by the evidence, which evidence may include testimony by persons other than experts.]"  (P.I.K. 4th 123.10).

The P.I.K. instruction makes it abundantly clear that this exception is well established and Defendant's claim that expert witnesses are required in all medical malpractice complaints is not well founded.

In this case, Defendant Karlin completely ignored patients' rights by neglecting to seek consent to treat or perform tests on Plaintiff.  These tests were accomplished by having Plaintiff held down by male police officers while blood was taken.  Plaintiff then had her clothes ripped off with police officers of the opposite sex participating so she could be violated by a catheter against her will.  Defendant Karlin ordered these tests without suitable investigation into the facts surrounding Plaintiff's presence in the emergency room. Defendant merely claims he ordered the tests so she could be sent to jail and did not care in

the slightest in what means the testing was accomplished.  In fact, Defendant is wholly comfortable with the fact that members of the opposite sex held her legs apart while she was catheterized against her will causing not only physical injuries, but extreme emotional distress.

Kansas courts have identified three essential elements to the common knowledge exception: (1) the plaintiff has asserted a claim of medical malpractice; (2) the care or result of the care is patently bad; and (3) a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony.  *Perkins v. Susan B. Allen Mem'l Hosp.,* 36 Kan.App.2d 885, 889, 146 P.3d 1102, 1106 (2006).

Applying the three essential elements to the common knowledge exception clearly shows that the appropriateness of Defendant Karlin's actions is an issue for the finder of fact. Defendant has not attempted to argue that the Plaintiff has not asserted a claim of medical malpractice, thus the first element is met.

Plaintiff has also established the second element, that the care or result of the care is patently bad, because Dr. Karlin has admitted that he made no effort to determine her wishes regarding any medical procedures.  Further, the facts in this case indisputably show that the Plaintiff was forcibly held down so blood could be drawn, members of the opposite sex participated in removing her clothing, and members of the opposite sex forcibly held her legs apart while she was sodomized by a catheter.

Plaintiff has established the final element and shown that a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony.  Defendant Karlin has admitted that he did not make any attempt to determine the

state of Plaintiffs consent, meaning it is up to a jury to decide whether his actions were appropriate.  It does not require a medical expert's testimony for the fact finder to find fault with the cold, barbaric treatment of the Plaintiff.

The facts in this case clearly fall within the realm of the common experience doctrine and this issue may be appropriately put in front of the finder of fact to determine whether the Defendant committed medical malpractice.  The Defendant is not entitled to summary judgment on the medical negligence claims.

V.    **Defendant Karlin's "emergent" situation defense does not apply in this case or is an issue for the finder of fact**

Defendant Ronald Karlin is not entitled to summary judgment because Plaintiff is not required to use expert testimony to establish her claim and Defendant's claimed exemption to the usual required informed consent is not applicable in this case.  The argument presented by Defendant at best could be an affirmative defense for the Defendant to try and use at trial.

The law is clear, and Defendant Karlin has admitted, that a doctor has a duty to inform a patient of the pros and cons of a proposed procedure.  In this case, Defendant Karlin admits that he did not even attempt to make such a disclosure, nor did he verify if anyone else had. Since Dr. Karlin did not make any attempt at a disclosure, a prime facia case is made and no expert is necessary because it is up to a jury to decide if Dr. Karlin's "emergent" defense is valid.

In medical malpractice and informed consent cases, the well-established test for determining whether expert testimony is required is whether the subject matter is too complex to fall within the common knowledge of the jury and is "beyond the capacity of a lay person to decide."  *Hare v. Wendler*, 263 Kan. 434, 445 (1997).

13

The facts of this case show that Defendant failed to make any reasonable effort to explain the procedures he was ordering against the Plaintiff or to even provide less invasive methods of extracting the urine and blood.  Instead Plaintiff was subjected to a gruesome ordeal in which she was held down forcibly by police officers while blood was drawn, then her clothes were ripped off with members of the opposite sex participating so she could finally be sodomized by a catheter against her will.  This is a case that does not require the use of expert testimony in that the barbaric behavior by Defendant is so outrageous that a lay fact finder will be able to indentify Defendant's violations of Plaintiff without the complexities that are often found in medical malpractice cases, such as an organ transplant or other complicated procedure.

Defendant is also relying on the proposition that because an "emergent" situation existed, Defendant was not required to obtain the required informed consent of Plaintiff.  In reality, the emergent exception in not applicable, or at best can only be presented by the Defendant as an affirmative defense.  The applicable P.I.K. instruction on the emergency exception states in part:

> "LIMITATIONS ON LIABILITY OF HEALTH CARE PROVIDER IN EMERGENCY CASES
> …
> C.    INFORMED CONSENT—WAIVER
>        Where a _____ in good faith gives emergency care or assistance *(within a hospital) (elsewhere)* without consent until such time as the physician employed by the *(patient) (patient's family) (guardian)* assumes responsibility for such patient's care, _____ is not liable for damages for any acts or omissions other than those resulting from negligence in giving such emergency care or assistance."  P.I.K. 4th 123.03.

This instruction pulls its language from K.S.A. 65-2891(c).

This exception is inapposite to the facts of this case.  Plaintiff was subjected to tests in a non-emergent situation where the Plaintiff's bodily fluids were taken against her will to bolster a driving under the influence charge.  Defendant was derelict in his duties and ordered

and allowed barbaric actions to be taken against Plaintiff and has later tried to justify his actions as dealing with an emergent situation.  Defendant failed to establish the need for these procedures from his own observations, nor did he inquire about the need by consulting other witnesses.

Even if the emergency defense were to apply to this case, at best it is merely an affirmative defense and its application must be decided by the fact finder at trial.

Consequently, Defendant Karlin is not entitled to summary judgment on Plaintiff's informed consent claims because the emergency defense does not apply, or should be left to the finder of fact.

## CONCLUSION

Defendant Karlin is not entitled to summary judgment on the medical negligence, informed consent and privacy and patient right claims.  Moreover, because a genuine issue of material fact exists in the present case, Defendant cannot establish that they are entitled to judgment beyond a reasonable doubt.   For these reasons, this Court should deny Defendant Karlin's Motion for Summary Judgment.


Respectfully submitted by,


    \s\ Jeremiah Johnson, #22726
Jeremiah Johnson, KS#22726
104 E. Poplar
Olathe, KS 66061
(913) 764-5010\Fax: (913) 764-5012
jeremiah@kcatty.com
**ATTORNEY FOR PLAINTIFF**