## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SAMANTHA COOK,                   ) | |
|                          ) | |
|         **Plaintiff,**         ) | |
|                           ) | **CIVIL ACTION** |
| **v.**                               ) | |
|                           ) | **No. 10-2133-KHV** |
| **OLATHE MEDICAL CENTER, INC., et al.**    ) | |
|                           ) | |
|         **Defendants.**        ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Samantha Cook brings suit against Olathe Medical Center, Inc. ("OMC"), Melissa Davenport, a nurse at OMC, Lee R. Kibbee and Wesley H. Smith, both Olathe police officers, the City of Olathe (the "City"), Ronald Karlin, a doctor at OMC and Kim Wheeler, a nurse at OMC.[1] Under 42 U.S.C. § 1983 and Kansas law, plaintiff asserts claims for violation of her constitutional rights, battery, intentional or negligent infliction of emotional distress, negligence and violation of privacy and patient rights.[2]  See Second Amended Complaint For Damages ("Second Amended Complaint") (Doc. #160) filed January 7, 2011.  This matter comes before the Court on plaintiff's Memorandum In Support Of Plaintiff's Motion For Partial Summary Judgment Against Defendants Kibbee And Smith ("Plaintiff's Memorandum") (Doc. #53) filed July 27, 2010 and Defendants'

_____

[1]      Plaintiff originally sued Olathe Health System, Inc. ("OHS") instead of OMC. Plaintiff sought leave to amend her complaint to substitute OMC because counsel for OHS had asserted that OHS was not the correct party.  See Plaintiff's Motion For Leave To File An Amended Complaint (Doc. #57) at 2.  The record does not reveal the relationship, if any, between OHS and OMC.

[2]      Plaintiff does not identify the law under which she claims violation of privacy and patient rights.  See Second Amended Complaint For Damages (Doc. #160) filed January 7, 2011. Also, plaintiff does not specify whether she sues Kibbee and Smith in their individual capacities, official capacities or both.

Cross-Motion For Summary Judgment (Doc. #77) which Kibbee, Smith and the City filed August 24, 2010. For reasons stated below, the Court overrules plaintiff's motion for partial summary judgment and sustains in part defendants' motion for summary judgment.

## I.   Legal Standards

### A.   Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion

for summary judgment.  See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110

(10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely

colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250-51.  In a response to a

motion for summary judgment, a party cannot rely on ignorance of facts, on speculation or on

suspicion, and may not escape summary judgment in the mere hope that something will turn up at

trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether

the evidence presents a sufficient disagreement to require submission to the jury or whether it is so

one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.

### B.    Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).  Qualified immunity provides government officials immunity from suit as well

as from liability for their discretionary acts.  See Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985).

The doctrine of qualified immunity serves the goals of protecting officials who are required to

exercise their discretion and the related public interest in encouraging the vigorous exercise of

official authority.  Butz v. Economou, 438 U.S. 478, 506 (1978).

When defendants assert a qualified immunity defense at the summary judgment stage, the

burden shifts to plaintiff to show that defendants violated a constitutional right and that the

constitutional right was clearly established at the time of the alleged violation.  Vondrak v. City of

Las Cruces, 535 F.3d 1198, 1204 (10th Cir. 2008).  To satisfy this burden, plaintiff must show facts

which, when viewed in the light most favorable to plaintiff, show that defendants conduct violated

a constitutional right and that the right was clearly established at the time of the alleged violation.[3]

See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If plaintiff does so, the burden shifts back to defendants to prove that no genuine issues of material fact exist and that defendants are entitled to judgment as a matter of law. See Olsen, 312 F.3d at 1312.  If the record shows an unresolved issue of fact relevant to the qualified immunity analysis, the Court must deny the motion for summary judgment.  See id.

## II.    Facts[4]

The following facts are either uncontroverted or where controverted, the contentions of each party are noted.

Kibbee and Smith work as police officers for the City of Olathe.  On April 17, 2008, when plaintiff was driving northbound on I-35, Kibbee stopped her for speeding.  A few minutes later, Smith joined Kibbee in the traffic stop.  Kibbee smelled alcohol on plaintiff and suspected that she was driving under the influence of alcohol.[5]   Before beginning field sobriety tests, Kibbee

---

[3]      It is often appropriate to first determine whether a violation occurred and then determine whether the constitutional right was clearly established, though the order of steps is not mandatory.  See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

[4]      Pursuant to D. Kan. Rule 56.1, the Court considers only those facts which the parties include in their statement of facts, in numbered fact paragraphs with proper record citation and support.  See Vasquez v. Ybarra, 150 F. Supp.2d 1157, 1160 (D. Kan. 2001).  Pursuant to D. Kan. Rule 56.1, for the purpose of summary judgment, the Court deems all such facts admitted unless specifically controverted by the opposing party.  See id.  The Court does not consider facts which the parties discuss only in the argument section of their briefs and not in a statement of facts pursuant to D. Kan. Rule 56.1, see Jones v. Unified Gov't Of Wyandotte County/Kansas City, Kan., 552 F. Supp.2d 1258, 1261 n.1 (D. Kan. 2008), and the Court does not consider facts which the record citation does not properly support.  Finally, the Court declines to consider arguments raised for the first time in a reply brief.  See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000); Rubio v. Turner Unified Sch. Dist. No. 202, 523 F. Supp.2d 1242, 1252 (D. Kan. 2007).

[5]      Defendants maintain that Kibbee also suspected that plaintiff was driving under the
(continued...)

performed a "pat-down" search of plaintiff.  The search included placing his hands in plaintiff's jeans pockets.  After performing field sobriety tests, Kibbee arrested plaintiff for driving under the influence ("DUI").  He cuffed her hands behind her back and placed her in the back seat of the patrol car.  Kibbee and Smith left plaintiff in the back seat of the patrol car and began to search her vehicle.

While plaintiff was in the back seat of the patrol car, she began to hyperventilate.  Defendants contend that plaintiff was screaming, yelling, kicking, biting and spitting.  See Defendants' Exhibit 1, suppression hearing transcript at 9.  Plaintiff contends that she did not scream or kick, but only knocked on the window.[6]  See Plaintiff's Reply Exhibit 2 at 52.  Defendants contend that plaintiff began yelling and informed Smith that she was claustrophobic and needed to be removed from the patrol car.  Smith replied that that was not an option.  A few minutes later, Kibbee and/or Smith believed that plaintiff was having trouble breathing and called an ambulance.[7]  Smith got plaintiff out of the patrol car and had her kneel on the side of the road.[8]  See Plaintiff's Exhibit I.

─────────────────────

[5](...continued)
influence of drugs.  Plaintiff disputes this fact.

  [6]    Shortly after Kibbee placed plaintiff in the back seat of the patrol car, the audio portion of the police video (apparently in Kibbee's patrol car) becomes silent.  See Plaintiff's Exhibit A at approximately 3:16:44.  The police video depicts the scene in front of the patrol car and does not show plaintiff sitting in the back seat.

  [7]    Defendants contend that plaintiff requested an ambulance.  See Plaintiff's Exhibits D and F.  Plaintiff contends that Kibbee and Smith decided to call the ambulance.

  [8]    Plaintiff contends that she remained handcuffed while she kneeled on the side of the road.  Although plaintiff's citation to the record does not support the assertion, see Samantha Cook's Reply To Defendants' Response To Her Motion For Partial Summary Judgment ("Plaintiff's Reply") (Doc. #86) ¶ 41; Plaintiff's Reply Exhibit 3 at 80-81, other record evidence supports her assertion.  The police video reveals that at the time paramedics carried plaintiff to the ambulance, her hands were cuffed behind her back.  See Plaintiff's Exhibit A at approximately 3:35:06.  Thus, it appears that at the time plaintiff kneeled on the side of the road, her hands were cuffed.

A Med-Act ambulance responded to the scene. Plaintiff asked to go to the hospital. Med-Act personnel strapped plaintiff to a stretcher and placed her in the ambulance. On the stretcher, plaintiff laid on her right side with her hands cuffed behind her back and straps securing her torso and feet to the stretcher. See Plaintiff's Exhibit A at approx. 3:35:06. At that time, plaintiff's behavior was cooperative. See id.; Plaintiff's Exhibit L. For at least ten minutes, plaintiff remained in the ambulance while Kibbee and/or Smith searched her vehicle.[9] See Plaintiff's Exhibit A at approx. 3:35:00-3:42:20. At some point, Kibbee and Smith got in the ambulance and rode with plaintiff to the hospital. The ambulance ride lasted about 15 minutes.

In the ambulance, plaintiff began yelling and screaming and became combative. The parties dispute when this occurred. Defendants maintain that plaintiff attempted to kick a paramedic and that they had to restrain her to prevent injury to herself, the paramedics and the officers. See Defendants' Exhibit 1, suppression hearing transcript at 10:12-22. Plaintiff contends that she became combative only in response to force used by the officers and that she did not intend to kick the paramedic. See Plaintiff's Reply (Doc. #86) ¶ 44. Plaintiff testified that after the officers got in the ambulance they started feeling around, "like checking my pockets and then, like holding, like, squeezing my face and they were just all over me." Plaintiff's Reply Exhibit 2 at 55:16-18. Plaintiff testified that she was trying to get the officers' hands off her and stop them from pinching, squeezing and holding her down. See Plaintiff's Exhibit Q. Plaintiff testified that at one point Kibbee choked her and that as a result of the officers' actions, she suffered bruises on her arms. See Plaintiff's Exhibits R and T. Plaintiff remained in handcuffs during this time.

---

[9]      At an unknown time, plaintiff informed Kibbee and/or Smith that she had been molested by a police officer when she was 12 years old. See Plaintiff's Exhibit K. At an unknown time, Kibbee and/or Smith relayed this information to the Med-Act crew. See id.

The ambulance took plaintiff to the emergency room at OMC. Upon arriving at the hospital, plaintiff continued to scream and kick. Kibbee believed that plaintiff was a threat to herself and all others present. In Kibbee and Smith's presence, hospital nurses removed plaintiff's clothes and put her in a hospital gown. During the clothes swap, Smith held plaintiff's left arm but turned away, trying not to look at her. See Defendant's Exhibit 1, suppression hearing transcript at 36:4-6. Dr. Karlin examined plaintiff and ordered blood and urine samples to ensure that plaintiff was not in need of potentially life saving treatment.[10] See Defendants' Exhibit 2, ¶ 1. Dr. Karlin also ordered that Cook be secured to the bed with hospital restraints.

At an unknown time, Kibbee read plaintiff the Kansas implied consent advisory to obtain consent for a blood or urine sample. Plaintiff did not respond.[11]

Kibbee and Smith held plaintiff down so that nurses could draw blood and take a urine sample. So that OMC nurses could insert a catheter in plaintiff, Kibbee held one of her legs while Smith held the other leg. See Plaintiff's Exhibit BB. At the time, plaintiff was restrained to the bed by hospital restraints, i.e. broad leather straps around her arms.[12] See Plaintiff's Exhibit EE. Plaintiff was not restrained by handcuffs at that time. If Kibbee and Smith did not hold plaintiff down, OMC nurses would not have been able to obtain the blood and urine samples without jeopardizing their safety. See Plaintiff's Exhibit X.

---

[10]     In interrogatory responses, Dr. Karlin states that at the time, he did not believe that plaintiff was capable of giving consent. See Defendant's Exhibit 2, ¶ 1.

[11]     The record is unclear when Kibbee asked plaintiff to consent to give a blood or urine sample.

[12]     During criminal proceedings, Davenport testified that despite the bed restraints, plaintiff could move her legs and OMC nurses asked the officers to be present in case plaintiff "would want to act out." Defendants' Exhibit 1 at 59:9-13. Davenport stated that two other nurses were at the head of the bed with plaintiff. See id. at 59:10-11.

Kibbee obtained plaintiff's blood and urine samples from the hospital and submitted them to the Kansas Bureau of Investigation for testing.  <u>See</u> Plaintiff's Exhibits AA.

As a result of the arrest, the prosecutor for Johnson County, Kansas charged plaintiff with a variety of crimes including refusing a preliminary breath test, possession of drug paraphernalia, driving under the influence, battery and battery on a law enforcement officer.  During plaintiff's criminal trial, Kibbee and Smith testified that plaintiff battered them, causing physical injuries. Plaintiff testified that she committed the acts of battery in self defense.  Dr. Karlin testified that plaintiff's blood test showed that her blood alcohol content was .153, nearly double the legal driving limit of .08.  Following trial, a jury convicted plaintiff on all charges.  Plaintiff has not been sentenced for the crimes and has not filed a notice of appeal.[13]

On April 17, 2009, plaintiff filed a notice of claim with the City of Olathe.

On March 8, 2010, plaintiff filed her complaint in this case.  <u>See</u> Doc. #1.  In the complaint, plaintiff asserted claims against Olathe Health System, Inc. ("OHS"), Davenport, Kellie Moulin, Kibbee, Smith and the City of Olathe Police Department (the "Police Department") for battery, intentional or negligent infliction of emotional distress, negligence and violation of constitutional rights.  <u>See</u> <u>id.</u>

---

[13]    Although the summary judgment record does not establish these facts, it appears that the trial and conviction occurred in the summer of 2008.  Defendants contend that plaintiff has not been sentenced because shortly after her conviction, she absconded to Florida, was arrested on other felony charges and has been held there since that time.  <u>See</u> <u>Defendants' Reply In Support Of Cross-Motion For Summary Judgment</u> (Doc. #114) filed September 27, 2010 at 5 ¶ 41.

On March 22, 2010, plaintiff filed an amended complaint.  <u>See</u> Doc. #3.  In the amended complaint, plaintiff asserted claims against OHS, Davenport, Kibbee, Smith, the Police Department, Karlin and Wheeler for battery, intentional or negligent infliction of emotional distress, negligence and violation of constitutional rights.  <u>See</u> <u>id.</u>[14]

On July 27, 2010, plaintiff filed a motion for partial summary judgment on her claims against Kibbee and Smith.  <u>See</u> Doc. #53.

On August 2, 2010, plaintiff filed a motion for leave to file a second amended complaint. <u>See</u> Doc. #57.

On August 27, 2010, Kibbee, Smith and the City of Olathe filed a motion for summary judgment on all claims against them.  <u>See</u> Doc. # 77.

On December 30, 2010, the Court granted plaintiff leave to file her second amended complaint.  <u>See</u> <u>Memorandum And Order</u> (Doc. #158).

On January 7, 2011, plaintiff filed the second amended complaint.  <u>See</u> Doc. #160.  In the second amended complaint, plaintiff asserts claims against OMC, Davenport, Kibbee, Smith, the City, Karlin and Wheeler for battery, intentional or negligent infliction of emotional distress, negligence, violation of privacy and patient rights and violation of constitutional rights.  <u>See</u> <u>id.</u>[15]

---

[14]     In amended complaint, plaintiff dropped her claims against Moulin and added as defendants Karlin and Wheeler.

[15]     In the second amended complaint, plaintiff substituted OMC for OHS and the City of Olathe for the Police Department.

In drafting their motions for summary judgment, the parties were aware of and addressed the allegations in the second amended complaint.  Plaintiff filed her motion for leave to file the second amended complaint on August 2, 2010, <u>see</u> Doc. #57, six days after she filed her motion for summary judgment.  To the motion for leave, plaintiff attached a copy of the proposed second amended complaint.  <u>See</u> <u>id.</u>  Defendants filed their motion for summary judgment on

(continued...)

## III.   Analysis

Against Kibbee, Smith and the City, plaintiff asserts the following claims: (1) Kibbee unlawfully searched her in violation of the Fourth and Fourteenth Amendments (Count I); (2) Kibbee and Smith battered her in violation of state law (Count II); (3) the City is liable for excessive force, unlawful search and seizure, failure to train, allowing officers to withhold exculpatory evidence and write incomplete reports and violation of privacy rights in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments (Count V); (4) Kibbee and Smith are liable for excessive force, unlawful search and seizure, violation of privacy and failure to intervene and/or prevent others from performing illegal actions against plaintiff in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments (Count VI);  and (5) Kibbee and Smith violated plaintiff's right to refuse treatment and right to privacy under undisclosed law (Count VIII).  See Second Amended Complaint (Doc. #160).[16]

------

[15](...continued)

August 24, 2010, three weeks after plaintiff filed her motion for leave to file the second amended complaint.  In their motion for summary judgment, defendants acknowledge the proposed second amended complaint and seek summary judgment on behalf of the City of Olathe, which was not yet a party in the case.  See Defendants' Memorandum In Support Of Cross-Motion For Summary Judgment ("Defendants' Memorandum") (Doc. #78) filed August 24, 2010 at 1 n.1.  In light of these facts, the Court will decide the motions for summary judgment based on the allegations in the second amended complaint.

[16]      Against OMC, Davenport, Karlin and Wheeler, plaintiff asserts the following claims: (1) Davenport and Wheeler battered her in violation of state law (Count II); (2) OMC, Davenport and Wheeler are liable for intentional or negligent infliction of emotional distress in violation of state law (Count III); (3) OMC, Wheeler, Davenport and Karlin committed negligence in violation of state law (Count IV); (4) OMC is liable for excessive force, unconstitutional search and seizure and violation of privacy rights in violation of the Fourth Fifth, Ninth and Fourteenth Amendments (Count V); (5) Wheeler and Davenport are liable for excessive force, unlawful search and seizure and violation of patient rights in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments (Count VII); and (6) Davenport, Wheeler and Karlin violated plaintiff's right to refuse treatment and

(continued...)

Plaintiff seeks partial summary judgment on her claims against Kibbee and Smith. Specifically, plaintiff asserts that as a matter of law, Kibbee and Smith violated her rights under the Fourth, Fifth and Fourteenth Amendments by (1) using excessive force in the ambulance; (2) performing an unnecessary strip search; and (3) holding her down at the hospital to obtain blood and urine samples. See Plaintiff's Memorandum (Doc. #53) at 7-17.[17]

Kibbee, Smith and the City seek summary judgment on some of plaintiff's claims.[18] Specifically, defendants assert that as a matter of law (1) Kibbee and Smith did not use excessive force against plaintiff in the ambulance or at the hospital and that even if they did use excessive

_____

[16](...continued)
right to privacy under undisclosed law (Count VIII). See Second Amended Complaint (Doc. #160).
         As to all claims, plaintiff does not clearly identify which underlying facts form the basis for each alleged constitutional violation. Both parties apparently believe that plaintiff asserts claims under the Eighth Amendment, see, e.g., Defendants' Memorandum (Doc. #78) at 9-10; Samantha Cook's Response To Defendants' Cross Motion For Summary Judgment ("Plaintiff's Response") (Doc. #98) filed September 14, 2010 at 18, but the second amended complaint does not assert a claim under the Eighth Amendment. See Doc. #160. In any event, because plaintiff had not been convicted at the time of the alleged violations, it appears that she could not state a claim for an Eighth Amendment violation. See Galloway v. Hadl, 548 F. Supp.2d 1215, 1217 n.1 (D. Kan. 2008) (citing Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1493 (10th Cir. 1990)) (Eighth Amendment protection attaches only after criminal conviction).

[17]     Plaintiff does not specify the counts on which she seeks summary judgment. Based on context, it appears that she seeks summary judgment on part of Count VI, which asserts claims against Kibbee and Smith for excessive force, unlawful search and seizure, violation of privacy and failure to intervene and/or prevent others from performing illegal actions against plaintiff in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments. See Doc. #160 at 19-21.
         Plaintiff asserts that as a matter of law, Kibbee and Smith violated her rights under the Eighth Amendment. See Plaintiff's Memorandum (Doc. #53) at 6-7. As noted, in the second amended complaint, plaintiff does not assert a claim for violation of rights under the Eighth Amendment. See Doc. #160. Accordingly, plaintiff is not entitled to summary judgment on such claim.

[18]     Defendants purport to seek summary judgment on all claims, see Defendants' Memorandum (Doc. #78) at 1-2, 23; their argument, however, does not address all of plaintiff's claims. See id. at 10-22.

force, they did not violate clearly established rights, see Defendants' Memorandum (Doc. #78) at 10-12; (2) Kibbee and Smith did not conduct a strip search of plaintiff and that even if they did, they did not violate clearly established rights, see id. at 12-14; (3) Kibbee and Smith did not conduct a body cavity search of plaintiff and that even if they did conduct a body cavity search, they did not violate clearly established rights, see id. at 14-18; (4) Kibbee and Smith did not violate plaintiff's right to privacy or other patient rights and that even if they did, such right was not clearly established, see id. at 18-19; (5) the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994), bars plaintiff's Section 1983 claims, see id. at 19-21; (6) because Kibbee and Smith did not violate plaintiff's constitutional rights, the City is not liable, see id. at 21; and (7) the state law battery claims are time barred, see id. at 21-22.

> **A.  Plaintiff's Motion For Summary Judgment**

Plaintiff seeks summary judgment on her claims that Kibbee and Smith violated her constitutional rights by (1) using excessive force in the ambulance; (2) performing an unnecessary strip search; and (3) holding her down at the hospital to obtain blood and urine samples.  See Plaintiff's Memorandum (Doc. #53) at 7-17.

> **1.  Whether Plaintiff Is Entitled To Summary Judgment On Her Claim That Kibbee And Smith Used Excessive Force In The Ambulance**

Plaintiff asserts that as a matter of law, Kibbee and Smith violated her constitutional rights by using excessive force in the ambulance.  See Plaintiff's Memorandum (Doc. #53) at 6-7. The objective reasonableness standard of the Fourth Amendment governs a claim of post-arrest excessive force.  See Graham v. Connor, 490 U.S. 386, 394-95 (1989); Frohmader v. Wayne, 958 F.2d 1024, 1026 (10th Cir. 1992).  Under the Fourth Amendment, the question is whether the defendants' actions were objectively reasonable in light of the facts and circumstances confronting

them, without regard to underlying intent or motivation.  See Graham, 490 U.S. at 397.  The fact finder must view reasonableness from defendants' perspective on the scene rather than with the "20/20 vision of hindsight."  Id. at 396.  The ultimate inquiry is whether from the perspective of a reasonable officer, the totality of the circumstances justified the use of force.  See Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008).  This reasonableness standard is clearly established for purposes of Section 1983 and requires the Court to balance several factors including the severity of the alleged crime, the degree of threat which the suspect poses to the officer and the public and whether the suspect cooperates or resists.  See Graham, 490 U.S. at 396-97; Olsen, 312 F.3d at 1314.

In support of her motion for summary judgment, plaintiff argues that defendants used excessive force in the ambulance, but she does not discuss the factual record in this regard.  See Plaintiff's Memorandum (Doc. #53) at 6-7.  Plaintiff presents evidence that in the ambulance, she was cooperative until Kibbee and Smith got into the vehicle and started feeling around, "like checking my pockets and then, like holding, like, squeezing my face and they were just all over me."  Plaintiff's Reply Exhibit 2 at 55:16-18.  Plaintiff was handcuffed and strapped to a stretcher at the time.  She contends that she became combative only in response to force used by defendants, and that she was trying to get defendants' hands off her and stop them from pinching, squeezing and holding her down.  See Plaintiff's Exhibit Q.  Plaintiff testified that Kibbee choked her and that as a result of defendants' actions, she suffered bruises on her arms.  See Plaintiff's Exhibits R and T.

Defendants dispute plaintiff's version of the facts.  Specifically, defendants maintain that plaintiff attempted to kick a paramedic and that they had to restrain her to prevent injury to herself, the paramedics and the officers.  See Defendants' Exhibit 1, suppression hearing transcript at 10:12-

22.  Viewed in the light most favorable to defendants, the record presents a genuine issue of material fact as to whether under the totality of the circumstances, defendants used an objectively unreasonable amount of force in the ambulance.  Plaintiff is not entitled to summary judgment on this claim.

### 2. Whether Plaintiff Is Entitled To Summary Judgment On Her Claim That Kibbee And Smith Performed An Unnecessary Strip Search

Plaintiff asserts that as a matter of law, Kibbee and Smith violated her constitutional rights by conducting a strip search at the hospital.  See Plaintiff's Memorandum (Doc. #53) at 8-10, 14-15.  The Fourth Amendment requires a balancing of the need for a particular search against the invasion of personal rights that the search entails.  See Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).  In determining whether a search violates the Fourth Amendment, the Court must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it and the place in which it is conducted.  See id.

Plaintiff asserts that "[t]he mere fact that Defendants Kibbee and Smith, as opposite sex police officers, viewed Samantha Cook in various states of nakedness establishes a clear violation of her civil rights and Kansas law."  Plaintiff's Memorandum (Doc. #53) at 14.  As an initial matter, the summary judgment record does not establish that Kibbee and Smith viewed plaintiff "in various states of nakedness."  Plaintiff points to no evidence which supports her assertion.  Smith testified that while hospital nurses removed plaintiff's clothes and put her in a hospital gown, he held plaintiff's left arm but turned away, trying not to look.  See Defendant's Exhibit 1, suppression hearing transcript at 36:4-6.  Viewed in the light most favorable to defendants, the facts suggest that Kibbee and Smith remained in the hospital emergency room to prevent plaintiff from injuring herself

and others during necessary medical procedures, and that they tried not to look at plaintiff during

moments of undress.  Plaintiff points to no authority which establishes that as a matter of law, such

acts violated her constitutional rights.  See Plaintiff's Memorandum (Doc. #53) at 8-10.  On this

record, plaintiff is not entitled to summary judgment on her claim that Kibbee and Smith performed

an unconstitutional strip search.

> **3.    Whether Plaintiff Is Entitled To Summary Judgment On Her Claims That Kibbee And Smith Violated Her Constitutional Rights By Holding Her Down To Obtain Blood And Urine Samples**

Plaintiff asserts that as a matter of law, Kibbee and Smith violated her constitutional

rights by holding her down to obtain blood and urine samples.  Specifically, plaintiff contends that

(1) exigent circumstances did not support a forced blood or urine draw, see id. (Doc. #53) at 11-17;

and (2) the forced catheterization constituted an unconstitutional body cavity search.  See id. at 10-

11.

The Fourth Amendment governs intrusions into the human body, including compulsory

blood and urine tests.  See Schmerber v. Calif, 384 U.S. 757, 767 (1966); Sanders v. Thomas, 167

Fed. Appx. 723, 724-25 (10th Cir. 2006).[19]  Such intrusions constitute searches under the Fourth

---

[19]     In Schmerber, while petitioner was at a hospital receiving treatment for injuries from a car accident, police arrested him for driving under the influence.  Police ordered a physician to obtain a blood sample which revealed that petitioner was intoxicated.  In state criminal proceedings, plaintiff complained that, inter alia, the blood test violated his right to be free from unreasonable searches and seizures under the Fourth Amendment.  The California state court overruled the objection and admitted the evidence.  California appellate courts affirmed the ruling and the United States Supreme Curt granted certiorari review.  See 384 U.S. at 759.

The Supreme Court found that under the circumstances, requiring petitioner to submit to a blood test was an appropriate incident to his arrest.  Specifically, the Supreme Court noted that officers plainly had probable cause to believe that petitioner was driving while intoxicated and could reasonably believe – based on the time required to take petitioner to the hospital and to investigate the scene of an accident – that they had no time to secure a warrant.  See id. at 770-71.  The Supreme

(continued...)

Amendment and are forbidden unless they are justified in the circumstances and made in a proper

manner.  See Schmerber, 384 U.S. at 768.  To determine whether a police-ordered blood or urine

test violates the Fourth Amendment, the Court must determine (1) whether police were justified in

requiring the test; and (2) whether police used reasonable means and procedures in taking the

sample.  See id.  Absent a warrant, police are not justified in requiring a blood or urine sample

unless probable cause and exigent circumstances exist.  See Marshall v. Columbia Lea Reg'l Hosp.,

474 F.3d 733, 741 (10th Cir. 2007).

> **a.    Whether Exigent Circumstances Justified Forced Blood And Urine Draws**

Plaintiff asserts that based on Kansas law, exigent circumstances did not

support a forced blood or urine draw.  Specifically, plaintiff points to K.S.A. § 8-1001, which she

contends "clearly specifies when a chemical test can be compelled in a DUI case and allows a blood

or urine test to be forced only when the suspect was involved in an accident resulting in serious

injury or death of any person."  Plaintiff's Memorandum (Doc. #53) at 12.[20]  To determine whether

---

[19](...continued)
Court found that officers reasonably chose a blood test to measure petitioner's blood-alcohol level
and that the test – which was taken in a hospital environment according to accepted medical
practices – was performed in a reasonable manner.  See id. at 771.

[20]    Plaintiff cites K.S.A. § 8-1002, but the language which she quotes is in K.S.A. § 8-
1001.  See Plaintiff's Memorandum (Doc. #53) at 12-14.

K.S.A. § 8-1001 provides, in part, as follows:

(a) Any person who operates or attempts to operate a vehicle within this state is
deemed to have given consent, subject to the provisions of this act, to submit to one
or more tests of the person's blood, breath, urine or other bodily substance to
determine the presence of alcohol or drugs. * * *

(continued...)

-16-

exigent circumstances exist for Fourth Amendment purposes, it is appropriate to look to state law.

See Marshall, 474 F.3d at 742.

_____

[20](...continued)

(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs . . . and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs . . . or (B) the person has been involved in a vehicle accident or collision resulting in property damage or personal injury other than serious injury; or *(2) if the person was operating or attempting to operate a vehicle and such vehicle has been involved in an accident or collision resulting in serious injury or death of any person* and the operator could be cited for any traffic offense, as defined in K.S.A. 8-2117, and amendments thereto. * * *

(d) A law enforcement officer may direct a medical professional described in this section to draw a sample of blood from a person: * * *

(3) if the person refuses to submit to and complete a test, if the person meets the requirements of paragraph (2) of subsection (b). * * *

(h) A law enforcement officer may request a urine sample upon meeting the requirements of paragraph (1) of subsection (b) and shall request a urine sample upon meeting the requirements of paragraph (2) of subsection (b).

(i) If a law enforcement officer requests a person to submit to a test of urine under this section, the collection of the urine sample shall be supervised by persons of the same sex as the person being tested and shall be conducted out of the view of any person other than the persons supervising the collection of the sample and the person being tested, unless the right to privacy is waived by the person being tested. When possible, the supervising person shall be a law enforcement officer. The results of qualitative testing for drug presence shall be admissible in evidence and questions of accuracy or reliability shall go to the weight rather than the admissibility of the evidence. If the person is medically unable to provide a urine sample in such manner due to the injuries or treatment of the injuries, the same authorization and procedure as used for the collection of blood in subsections (d) and (e) shall apply to the collection of a urine sample.

K.S.A. § 8-1001 (emphasis added).

Section 8-1001(d) provides that, inter alia, a law enforcement officer may direct a medical professional to draw a sample of blood if the person was operating a vehicle which has been involved in an accident or collision resulting in serious injury or death of any person and the operator could be cited for any traffic offense. See K.S.A. § 8-1001(d)(3). Under this provision, because plaintiff was not involved in an accident resulting in serious injury or death, it appears that Kansas law would not support a finding of exigent circumstances to justify a forced blood or urine draw. See, e.g., Marshall, 474 F.3d at 746.

Defendants do not contend that exigent circumstances supported a forced blood or urine draw. See Defendants' Memorandum (Doc. #78) at 15-25. Rather, defendants assert that they did not cause the procedures to occur. Specifically, defendants contend that they did not order the tests and that their only role was to restrain plaintiff during the procedures. See id. at 15-18. The record presents a genuine issue of material fact in this regard. Defendants have presented evidence that Dr. Karlin ordered the blood and urine draws to ensure that plaintiff was not in need of potentially life saving treatment.[21] On the other hand, some evidence suggests that Kibbee and Smith may have facilitated the procedures to obtain samples for plaintiff's criminal proceedings.[22] Viewing the facts in the light most favorable to defendants, a reasonable fact finder could conclude that Kibbee and Smith did not cause the forced blood and urine draws. On this record, plaintiff is not entitled to summary judgment on these claims.

---

[21]    The record is silent as to whether Dr. Karlin ordered staff to forcefully catheterize plaintiff.

[22]    Hospital staff testified that they could not have obtained the blood and urine samples if Kibbee and Smith had not held plaintiff down. See Plaintiff's Exhibit X.

-18-

b.      **Whether Kibbee and Smith Performed An Unconstitutional Body Cavity Search**

Plaintiff contends that as a matter of law, by forcing her catheterization, Kibbee and Smith performed an unconstitutional body cavity search.  In support of her argument, plaintiff cites Rochin v. Calif., 342 U.S. 165 (1952) and Yanez v. Romero, 619 F.2d 851 (10th Cir. 1980).  See Plaintiff's Memorandum (Doc. #53) at 10-11.  In those cases, the courts addressed whether police conduct violated substantive due process rights.  In Rochin, the Supreme Court found that gross and extreme conduct by police which shocked the conscience – i.e. seizing defendant from his bedroom without warrant and forcibly pumping his stomach – violated a defendant's right to due process.  342 U.S. at 172-74.

In Yanez, petitioner submitted to a urine test after police threatened to use a catheter.  A jury relied on the urine tests results to convict petitioner of unlawful possession of morphine.  Petitioner sought habeas relief under 28 U.S.C. § 2254, alleging that police violated his constitutional rights in obtaining the urine sample under threat of catheterization.  The federal district court denied relief.  On appeal, the Tenth Circuit affirmed, finding that unlike the facts in Rochin, the facts in Yanez were not gross and extreme.  See id. at 854.[23]  Thus, the Tenth Circuit found no due process violation.  See id. at 854-55.  In dicta, the Tenth Circuit stated that if a catheter had actually been used, the case would be "much closer" to the facts in Rochin.  Id. at 855-56.  The Tenth Circuit stated that the forceful use of a catheter to obtain a body fluid is a "gross personal indignity," id. at 855, and that the state's apparent frequent use of a catheter is "an undesirable practice which is

---

[23]      The Tenth Circuit did not consider whether the urine draw violated petitioner's rights under the Fourth Amendment because the Supreme Court decision in Stone v. Powell, 428 U.S. 465 (1976), precluded habeas relief where the state had provided an opportunity for full and complete litigation of a Fourth Amendment claim.  See Yanez, 619 F.2d at 853-54.

ultimately likely to produce a fact situation which will be ruled shocking and unlawful." Id. at 854.

Rochin and Yanez provide some support for the conclusion that forced catheterization may violate a person's substantive due process rights. They do not, however, compel such conclusion as a matter of law. Moreover, as discussed, a material fact issue exists as to whether Kibbee and Smith caused the forced catheterization. On this record, plaintiff is not entitled to summary judgment.

### B.    Defendants' Motion For Summary Judgment

Defendants assert that as a matter of law (1) Kibbee and Smith did not use excessive force in the ambulance or at the hospital and that even if they did use excessive force, they did not violate clearly established rights, see Defendants' Memorandum (Doc. #78) at 10-12; (2) Kibbee and Smith did not conduct a strip search and that even if they did conduct a strip search, they did not violate clearly established rights, see id. at 12-14; (3) Kibbee and Smith did not conduct a body cavity search and that even if they did conduct a body cavity search, they did not violate clearly established rights, see id. at 14-18; (4) Kibbee and Smith did not violate plaintiff's right to privacy or other patient rights and that even if they did, such right was not clearly established, see id. at 18-19; (5) the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994), bars plaintiff's Section 1983 claims, see id. at 19-21; (6) because Kibbee and Smith did not violate plaintiff's constitutional rights, the City is not liable, see id. at 21;  and (7) plaintiff's state law battery claims are time barred, see id. at 21-22.[24]

---

[24]    Plaintiff asks the Court to delay ruling on defendants' motion for summary judgment until she has had an opportunity to review over 3200 documents which defendants produced on September 10, 2010, two months after their Rule 26 disclosures were due. See Plaintiff's Response (Doc. #98) at 11-12. Plaintiff states that she believes that at least some of the documents would be
(continued...)

1.   **Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Claims For Excessive Force**

Defendants assert that as a matter of law Kibbee and Smith did not use excessive force in the ambulance or at the hospital and that even if they did use excessive force, they did not violate clearly established rights.  See Defendants' Memorandum (Doc. #78) at 10-12.  To overcome

---

²⁴(...continued)
relevant to her response and that she would like to review them before responding to the summary judgment motion.  See id. at 12.  More than five months have passed, and plaintiff has not filed a motion for leave to supplement her response.  Under these circumstances, the Court will not delay ruling on defendants' motion for summary judgment.

Plaintiff asks the Court to delay ruling on the summary judgment motion until defendants produce certain recordings of the night in question.  See Plaintiff's Response (Doc. #98) at 12-13.  Plaintiff states that this matter is the subject of a motion to compel Rule 26 disclosures.  See id. at 12.  On September 1, 2010, plaintiff filed a motion to compel defendants to produce, inter alia, electronically stored information and missing audio and video evidence.  See Doc. #82.  On November 24, 2010, Magistrate Judge David J. Waxse overruled plaintiff's motion.  See Doc. #144.  Plaintiff did not object to that ruling.  On this record, the Court will not delay ruling on defendants' motion for summary judgment.

Plaintiff asks the Court to delay ruling on the summary judgment motion until defendants have either produced certain recordings or explained how they were lost or destroyed.  See Plaintiff's Response (Doc. #98) at 13-15.  On September 28, 2010, plaintiff filed a motion for "spoilation sanctions" due to defendants' alleged destruction of four computer hard drives which contained, inter alia, the original audio recordings of defendants' contact with plaintiff.  See Doc. #116.  On October 27, 2010, plaintiff filed a second motion for "spoilation sanctions" due to defendants' failure to preserve and produce Smith's in-car video recording.  See Doc. #132.  On February 2, 2011, Judge Waxse entered an order which overruled both motions.  See Doc. #180.  Plaintiff did not object to that ruling.  In light of the ruling, the Court will not delay ruling on defendants' motion for summary judgment.

Plaintiff asks the Court to delay ruling on the summary judgment motion until defendants have produced limited discovery.  Plaintiff states that she "believes limited discovery in the form of requests for admissions, interrogatories, and requests for production of documents is necessary to properly and completely respond to [d]efendants' summary judgment motion."  Plaintiff's Response (Doc. #98) at 15.  If a party opposing summary judgment shows by affidavit that for specific reasons, it cannot present facts essential to justify its opposition, the Court may, inter alia, order a continuance to allow discovery to be taken.  See Rule 56(f), Fed. R. Civ. P.  Plaintiff has not provided an affidavit which states specific reasons why she cannot present facts essential to justify her opposition.  On this record, the Court will not delay ruling on defendants' motion for summary judgment.

the qualified immunity defense at summary judgment, plaintiff must show that defendants violated a constitutional right which was clearly established at the time of the alleged violation.  See Vondrak, 535 F.3d at 1204.  To determine whether plaintiff has shown violation of a constitutional right, the Court must ascertain whether viewed in the light most favorable to plaintiff, the facts show that defendants used excessive force, i.e. whether in light of the facts and circumstances, defendants used an amount of force which was not objectively reasonable from the perspective of a reasonable officer on the scene.  See Bridges v. Yeager, 352 Fed. Appx. 255, 258 (10th Cir. 2009).

> ### a.      Whether Kibbee And Smith Used Excessive Force In Ambulance

Plaintiff presents evidence that in the ambulance, she was cooperative until Kibbee and Smith got into the vehicle and started feeling around, "like checking my pockets and then, like, holding, like, squeezing my face and they were just all over me."  Plaintiff's Reply Exhibit 2 at 55:16-18.  At the time, plaintiff was handcuffed and strapped to a stretcher.  She contends that she became combative only in response to use of force by defendants, and that she was trying to get defendants' hands off her and stop them from pinching, squeezing and holding her down.  See Plaintiff's Exhibit Q.  Plaintiff also testified that Kibbee choked her and that as a result of defendants' actions, she suffered bruises on her arms.  See Plaintiff's Exhibits R and T.  Defendants dispute plaintiff's version of the facts and maintain that plaintiff attempted to kick a paramedic and that they had to restrain her to prevent injury to herself, the paramedics and the officers.  See Defendants' Exhibit 1, suppression hearing transcript at 10:12-22.  In ruling on defendants' motion for summary judgment, the Court must view the facts in the light most favorable to plaintiff.  See Olsen, 312 F.3d at 1312.  On this record, a reasonable fact finder could conclude that defendants used an objectively unreasonable amount of force against plaintiff in the ambulance.

Thus, plaintiff has shown facts which demonstrate that defendants violated a constitutional right.

To overcome qualified immunity, plaintiff must also show that at the time of the alleged violation, the constitutional right was clearly established.  See Vondrak, 535 F.3d at 1204. Ordinarily, for a rule to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). Because excessive force claims depend on the facts and circumstances of each particular case, the Tenth Circuit has found that a previously published opinion involving exactly the same circumstances will almost never exist. See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007).  Therefore, in excessive force cases, the more relevant inquiry is whether the law put officials on fair notice that the described conduct was unconstitutional.  See id.  To make this determination, the Tenth Circuit has adopted a sliding scale under which the more obviously egregious the conduct is, in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.  See Casey, 509 F.3d at 1284 (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004)).  Thus, when an officer's violation of the Fourth Amendment is particularly clear from the Supreme Court decision in Graham, the Tenth Circuit does not require a second decision with greater specificity to clearly establish the law.  See Casey, 509 F.3d at 1284.

Here, plaintiff has produced evidence that while she was compliant, handcuffed and strapped to a stretcher, Kibbee and Smith started feeling around, checking her pockets and pinching, squeezing and holding her down; that Kibbee choked her; and that she suffered bruises on her arms as a result of their actions.  Accepting plaintiff's version of the facts, the law is clearly established

-23-

that a reasonable officer would have known that the alleged use of force was unreasonable.  See, e.g., Casey, 509 F.3d at 1284-85; Bridges, 352 Fed. Appx. at 259-60.  On this record, plaintiff has shown facts which demonstrate that defendants' actions violated a constitutional right which was clearly established at the time of the alleged violation.

The burden thus shifts back to defendants to prove that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law.  See Olsen, 312 F.3d at 1312. Defendants assert that they restrained plaintiff for her safety and the safety of the paramedics and officers, and that the restraint was objectively reasonable under the circumstances.  See Defendants' Memorandum (Doc. #78) at 11.  Defendants have not shown an absence of material fact in this regard.  As discussed, plaintiff presents evidence that while she was compliant, handcuffed and strapped to a stretcher, defendants used unreasonable physical force against her.  Because the record reveals an unresolved issue of fact relevant to the qualified immunity analysis, defendants are not entitled to summary judgment on this ground.  See Olsen, 312 F.3d at 1314-15; Bridges, 352 Fed. Appx. at 259-60.

### b.      Whether Kibbee And Smith Used Excessive Force At Hospital

Defendants assert that they are entitled to summary judgement on plaintiff's claims that they used excessive force at the hospital by holding plaintiff down for blood and urine draws.  See Defendants' Memorandum (Doc. #78) at 10-12.  As discussed, compulsory blood and urine tests constitute searches under the Fourth Amendment which must be justified in the circumstances and made in a proper manner.  See Schmerber, 384 U.S. at 767-68.  Defendants do not address whether the blood and urine searches themselves were unconstitutional – only whether Kibbee and Smith used excessive force in holding plaintiff down.  As noted, to overcome the

qualified immunity defense, plaintiff must show that defendants violated a clearly established constitutional right, i.e. that defendants used an amount of force which was not objectively reasonable from the perspective of a reasonable officer on the scene.  See Vondrak, 535 F.3d at 1204; Bridges, 352 Fed. Appx. at 258.

With regard to the blood draw, plaintiff challenges the fact that Kibbee and Smith held her down for a forced blood draw, but she does not assert that in doing so, they used excessive physical force.  See Plaintiff's Response (Doc.#98) at 21 (arguing that citizens are granted more protections in the taking of their blood than in other types of searches).  In other words, if defendants were justified in holding down plaintiff for a blood draw, she apparently does not assert that they used objectively unreasonable force in doing so.  On this record, to the extent plaintiff asserts a separate claim that Kibbee and Smith used excessive force in holding her down to obtain a blood sample (i.e. separate from her claim that the forced blood draw constitutes an unconstitutional search), defendants are entitled to summary judgment.

With regard to the urine draw, again, plaintiff challenges the fact that Kibbee and Smith held her down for a forced catheterization, but she does not assert that in doing so, they used excessive physical force.  See Plaintiff's Response (Doc.#98) at 21 (arguing that courts have shown disdain for forced catheterization).  Thus, if defendants were justified in holding plaintiff down for a urine draw, she apparently does not assert that they used objectively unreasonable force in doing so.  On this record, to the extent plaintiff asserts a separate claim that Kibbee and Smith used excessive force in holding her down to obtain a urine sample (i.e. separate from her claim that the forced urine draw constitutes an unconstitutional search), defendants are entitled to summary judgment.

### 2.   Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Claim That Kibbee And Smith Conducted An Unconstitutional Strip Search

Defendants assert that as a matter of law, Kibbee and Smith did not conduct a strip search of plaintiff and that even if they did conduct a strip search, they did not violate clearly established rights. See Defendants' Memorandum (Doc. #78) at 12-14. As noted, the Fourth Amendment requires courts to balance the need for a particular search against the invasion of personal rights that the search entails. See Archuleta, 523 F.3d at 1283 (quoting Bell, 441 U.S. at 559). In determining whether a search violates the Fourth Amendment, the Court must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it and the place in which it is conducted. See Archuleta, 523 F.3d at 1283.

Defendants contend that plaintiff has presented no evidence that they conducted a strip search. The Court agrees. K.S.A. § 22-2520 defines "strip search" to mean "removing or rearranging some or all of a person's clothing, by or at the direction of a law enforcement officer, so as to permit a visual inspection of the genitals, buttocks, anus or female breasts of such person." K.S.A. § 22-2520. Plaintiff presents no evidence that defendants directed hospital staff to remove or rearrange plaintiff's clothing to permit visual inspection of her body. The uncontroverted evidence establishes that any removal or rearranging of clothing was done to provide medical treatment and/or obtain blood and urine samples. Moreover, plaintiff presents no evidence that defendants viewed her body.[25] On this record, a fact finder could not reasonably conclude that defendants conducted a strip search of plaintiff. Defendants are entitled to summary judgment on

---

[25]     Smith testified that while hospital nurses removed plaintiff's clothes and put her in a hospital gown, he held plaintiff's left arm but turned away, trying not to look. See Defendant's Exhibit 1, suppression hearing transcript at 36:4-6.

this claim.[26]

3.      **Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Claim That Kibbee And Smith Conducted An Unconstitutional Body Cavity Search**

Defendants assert that as a matter of law, Kibbee and Smith did not conduct a body cavity search of plaintiff and that even if they did conduct a body cavity search, they did not violate her clearly established rights.  See Defendants' Memorandum (Doc. #78) at 14-18.  Defendants apparently couch their argument in terms to match plaintiff's assertion that a forced catheterization constitutes a body cavity search.  See id. at 14; Plaintiff's Memorandum (Doc. #53) at 10.  As an initial matter, the Court does not agree with plaintiff's characterization.  See K.S.A.§ 22-2520.[27] Regardless of its characterization, however, the relevant inquiry is whether the forced catheterization constitutes an unreasonable search under the Fourth Amendment.  Such intrusions are forbidden unless they are justified in the circumstances and made in a proper manner.  See Schmerber, 384 U.S. at 768.  To determine whether the forced catheterization violates the Fourth Amendment, the Court must determine (1) whether police were justified in requiring the urine test; and (2) whether police used reasonable means and procedures in taking the urine sample.  See id.  Absent a warrant, police are not justified in requiring a urine test unless probable cause and exigent circumstances exist.  See Marshall, 474 F.3d at 741.

Defendants assert that they are not liable for the forced catheterization because they did not

---

[26]      To the extent plaintiff claims that defendants conducted an illegal search by holding down her legs for the forced catheterization, the Court evaluates such claim in the context of whether defendants used reasonable means and procedures in taking the urine sample.  See infra text part III. B. 3.

[27]      K.S.A. § 22-2520(b) states that a "body cavity search" means "the touching or probing of a person's vaginal or rectal cavity by or at the direction of a law enforcement officer."

cause it to occur.  See Defendants' Memorandum (Doc. #78) at 15-18.  Specifically, defendants

assert that Dr. Karlin ordered the tests, that they had no involvement in the decision and that their

only involvement was to restrain plaintiff for safety reasons while medical staff performed the

procedures.  See id.  In support of their assertion, defendants cite the following cases: Lovett v.

Boddy, 810 F. Supp. 844 (W.D. Ky. 1993);[28] LeVine v. Roebuck, 550 F.3d 684 (8th Cir. 2008);[29]

---

[28]  In Lovett, plaintiff alleged that police illegally extracted blood and urine samples. Following a high speed automobile chase by police, plaintiff's car crashed and injured plaintiff and another person.  Lovett v. Boddy, 810 F. Supp. at 845.  Paramedics rushed plaintiff to the hospital. See id.  A police officer followed and arrested plaintiff at the hospital.  See id.  Emergency room staff provided treatment which stabilized plaintiff's condition.  See id.  In the process, hospital staff took blood and urine samples for medical testing and transferred remaining samples to the police officer.  See id. at 845-46.  A police toxicology analysis of the blood and urine samples revealed the presence of alcohol in plaintiff's system at the time of the accident.  See id. at 846.  The analysis was admitted into criminal proceedings against plaintiff, who was convicted of driving under the influence.  See id. at 846.

Under Section 1983, plaintiff sued the police officer and hospital nurse, alleging that the extraction of blood and urine violated his constitutional rights.  See id. at 846.  On cross motions for summary judgment, the district court found that as to the blood draw, the parties disputed who ordered the blood test, i.e. whether the police officer or doctor ordered the test.  The district court found that even if it accepted plaintiff's contention that the police officer ordered the test, no constitutional violation occurred because the officer had probable cause to believe that plaintiff had been driving while intoxicated, the administration of the test without a warrant was reasonable in light of the quickly-perishing nature of blood alcohol content and the test was performed by competent medical personnel in a medical setting.  See id. at 847-48.

As to the urine draw, the district court found that "[t]he forcible extraction of urine through a catheter arguably presents Fourth Amendment considerations of somewhat greater intensity."  810 F. Supp. at 848.  It noted that unlike a blood draw, one cannot say that catheterization involves "virtually no risk, trauma, or pain."  Id. (quoting Schmerber, 384 U.S. at 771).  The district court stated that although a urine test is a highly effective means for identifying the presence of alcohol, its effectiveness is greatly diminished if police already have a sample of the suspect's blood.  See Lovett, 810 F. Supp. at 848.  Under those circumstances, the district court noted that little or no risk exists that proof of the presence of alcohol will vanish and that the urine test will provide "only slight additional benefit."  The district court stated that the Fourth Amendment's protection of "human dignity and privacy" might require at the very least, a warrant before government officials could compel a citizen to undergo a catheterization.  Id. (quoting Schmerber, 348 U.S. at 770).

The district court did not address whether the urine draw violated the Fourth

(continued...)

Rudy v. Village of Sparta, 990 F. Supp. 924 (W.D. Mich. 1996);[30] Sullivan v. Bornemann, 384 F.3d

<hr>

[28](...continued)
Amendment, however, because it found no evidence which tied the officer to the catheterization. See id. 848-49. In so finding, the district court noted that the hospital doctor had testified that he ordered the catheterization due to medical necessity and that in making the order, no request or order of a law enforcement officer influenced him. See id. The police officer observed the catheterization and took possession of a portion of the urine extracted, but the district court found that plaintiff failed to show a genuine issue of material fact suggesting that the officer caused him to be subjected to catheterization. See id. at 849.

In Lovett, the police officer was present for the catheterization, but he did not participate in the procedure and the undisputed evidence showed that the doctor ordered it for medical reasons. Here, the record is silent as to whether Dr. Karlin ordered nurses to forcibly catheterize plaintiff. Also, Kibbee and Smith physically held down plaintiff for the urine draw, creating a question of fact as to whether they helped cause the catheterization to occur.

[29] In LeVine, under Section 1983, a state inmate claimed that a correctional officer and prison nurses violated his Fourth Amendment rights by forcing him to undergo catheterization to avoid prison discipline when he could not provide a urine sample for random drug testing. 550 F.3d at 685. The district court found that the officer violated plaintiff's Fourth Amendment rights because "involuntary catheterization of 68-year-old man with a history of prostate problems, as part of a random drug screening and without suspicion is unreasonable when other less intrusive options are available, such as keeping [plaintiff] in a room until he was able to urinate." Id. at 688 (quotations omitted). The district court nevertheless granted summary judgment in favor of defendant, finding that at the time of the officer's actions, the law of the Eighth Circuit was not clearly defined. See id.

On appeal, the Eighth Circuit found that the district court assumed a fact – that the officer ordered the catheterization – which was not supported in the record. See id. at 688. The Eighth Circuit found that even if the corrections officer ordered plaintiff to go to the medical unit, she had no contact with medical professionals after he arrived and no authority to direct them to perform the procedure. See id. 689. Because no evidence supported a finding that the officer was personally responsible for the catheterization, the Eighth Circuit found that the district court erred in concluding that the officer violated plaintiff's Fourth Amendment rights. See id. at 689.

In LeVine, the corrections officer had no contact with medical professionals and was not present for the urine draw. Here, Kibbee and Smith held down plaintiff for the urine draw, creating a fact question as to whether they helped cause the catheterization to occur.

[30] In Rudy, police arrested plaintiff for driving under the influence and took him to the sheriff's department for a breathalyzer test. 990 F. Supp. at 926. Plaintiff could not blow strong enough, and officers obtained a search warrant to withdraw his blood. See id. The nurse at the sheriff's department, however, refused to draw plaintiff's blood without first receiving a medical clearance. See id. Officers transported plaintiff to a hospital, where he was unable to provide a urine sample. See id. at 927. When nurses told plaintiff that they would forcibly catheterize him,

(continued...)

372, 376-77 (7th Cir. 2004);[31] and <u>Tinius v. Carroll County Sheriff's Dept.</u>, 321 F. Supp.2d 1064

_____

[30](...continued)

he became combative.  <u>See</u> <u>id.</u>  The hospital doctor ordered nurses to inject plaintiff with a sedative and obtain a urine sample to screen for possible drug abuse.  <u>See</u> <u>id.</u>  The doctor testified that when a patient displayed combative behavior, this was standard procedure and that he ordered the urine test solely for medical reasons.  <u>See</u> <u>id.</u>  After waiting some time, a technician asked plaintiff to provide a urine sample but he was unable to do so.  <u>See</u> <u>id.</u>  According to nurse testimony, the hospital doctor thereafter verbally ordered her to catheterize plaintiff, though he did not sign a written order in this regard.  <u>See</u> <u>id.</u>  Plaintiff alleged that after he noted that the search warrant said nothing about urine, an officer grabbed his arm and ordered the technician to perform the catheterization.  <u>See</u> <u>id.</u>

      Plaintiff sued under Section 1983 alleging, <u>inter alia</u>, that by subjecting him to forced catheterization, the officer violated his Fourth Amendment right to be free from unreasonable searches and seizures.  The district court granted summary judgment in favor of the officer.  The district court found that the officer's acts of waiving an inapplicable search warrant in plaintiff's face, grabbing plaintiff's arm in an effort to restrain him and telling the technician to "just do it" supported plaintiff's assertion that the officer assisted in the procedure.  <u>See</u> <u>id.</u> at 928-29.  The district court found, however, that viewed as a whole, the evidence clearly indicated that the hospital doctor and staff solely caused the alleged violation.  <u>See</u> <u>id.</u> at 929.  The district court stated that at most, the officer's instruction for the technician to "just do" the procedure  was a "mere scintilla of evidence" which was not enough to defeat summary judgment.  <u>Id.</u>

      In <u>Rudy</u>, hospital staff obtained the urine sample in the course of providing police medical clearance to obtain a blood sample pursuant to a search warrant.  Nothing suggests that police used the urine sample in criminal proceedings.  Moreover, the evidence clearly established that the doctor ordered staff to catheterize plaintiff.  Here, the record is silent as to whether Dr. Karlin ordered nurses to forcibly catheterize plaintiff.  Moreover, Kibbee and Smith physically held down plaintiff during the procedure and obtained a sample for the criminal proceedings.  On these facts, a material fact question exists as to whether Kibbee and Smith helped cause the catheterization to occur.

    [31]  In <u>Sullivan</u>, police arrested plaintiff for disorderly conduct and took him to the county jail, where jail personnel administered a breathalyzer test.  <u>See</u> 384 F.3d at 374.  The test result indicated a high level of intoxication and the jail refused to admit plaintiff without a medical clearance.  <u>See</u> <u>id.</u>  Police officers took plaintiff to a hospital emergency room, plaintiff became uncooperative, angry and combative.  <u>See</u> <u>id.</u>  Two officers accompanied plaintiff.  <u>See</u> <u>id.</u>  A nurse examined plaintiff and reported her findings to an emergency room doctor, who ordered a urine sample.  <u>See</u> <u>id.</u>  The nurse asked plaintiff to voluntarily produce a urine sample.  <u>See</u> <u>id.</u>  Plaintiff tried to do so, but was unsuccessful.  <u>See</u> <u>id.</u>  After half an hour, the doctor ordered the nurse to obtain a sample by catheterization.  <u>See</u> <u>id.</u>  Plaintiff refused to consent to the procedure.  <u>See</u> <u>id.</u>  The nurse explained to the officers that to minimize the risk of injury and infection, plaintiff's ability to move must be restricted during the procedure.  The officers physically restrained plaintiff during

                             (continued...)

(N.D. Iowa 2004).[32]  Each of those cases involved distinguishing facts; none compel a conclusion

---

[31](...continued)
the catheterization.  See id.  Before doing so, an officer specifically informed plaintiff that they would not use the urine sample for criminal prosecution or other evidentiary purposes.  See id.

Under Section 1983, plaintiff sued the officers and others for unreasonable search and seizure under the Fourth Amendment and violation of his due process right to refuse unwanted medical treatment.  See id. at 375.  Based on the parties' stipulation of facts, the district court dismissed the claims against the officers based on qualified immunity.  See id.  Plaintiff appealed.  See id.  The Seventh Circuit affirmed.  The Seventh Circuit found that after plaintiff registered a high score on the breathalyzer test, defendants had a legitimate state interest in taking plaintiff to the emergency room for a medical clearance.  See id. at 376.  It narrowed its focus on whether the officers' acquiescence in the nurse's request to help restrain plaintiff violated his rights under the Fourth Amendment.  Noting the undisputed facts that (1) police had no input in plaintiff's medical care; (2) police did not use the catheterization to search for evidence to determine his guilt or innocence; and (3) police used the catheterization solely to assure plaintiff's medical well being before transporting him to the county jail, the officers acted reasonably under the circumstances.  See id. at 376-77.  The Seventh Circuit concluded that the officers' acts did not violate plaintiff's rights under the Fourth Amendment.  See id. at 377.

Unlike Sullivan, in this case, police obtained the urine results for criminal proceedings against plaintiff.

[32]      In Tinius, sheriff deputies found plaintiff wandering around, apparently intoxicated, and determined that for his safety and the safety of others, he could not remain at large.  321 F. Supp.2d at 1069.  Deputies handcuffed plaintiff and transported him to a hospital.  They turned him over to hospital staff but remained at the hospital for security purposes.  See id.  At the hospital, plaintiff remained in handcuffs.  He was incoherent and agitated.  See id.

The hospital doctor ordered blood and urine tests to determine whether plaintiff suffered from a psychiatric problem and the proper course of treatment.  When plaintiff was unable to urinate, the doctor, nurse and deputies discussed a plan to catheterize him.  See id. at 1070.  Thereafter, the deputies restrained plaintiff while the nurse performed the catheterization.  See id.  The hospital ultimately obtained a court-ordered commitment to admit plaintiff into a mental hospital for observation.  See id. at 1071.

Plaintiff sued the deputies claiming, inter alia, that by detaining him, transporting him to the hospital and assisting in his involuntary catheterization, they violated his rights under the Fourth Amendment.  See id. at 1073-74.  The district court found that the deputies acted solely in a community care-taking function, and not for criminal investigation purposes.  See id. at 1074-76.  On the facts of the case, the district court concluded that the deputies acted reasonably under the circumstances.  Specifically, the district court found that the deputies reasonably believed that they could not leave plaintiff along the road and that they transported him to the hospital for the non-investigatory purpose of providing him medical and/or psychological assistance.  See id. at 1075.  The district court found that the deputies had no input in medical decisions and remained at the

(continued...)

-31-

that on the facts of this case, defendants are entitled to judgment as a matter of law.

Defendants contend that Dr. Karlin solely caused the catheterization. The record supports the conclusion that Dr. Karlin ordered a urine test, but it is silent as to whether he ordered staff to forcibly catheterize plaintiff. Kibbee and Smith physically held down plaintiff for the procedure and obtained a sample for criminal investigation purposes. Viewing this evidence in the light most favorable to plaintiff, a reasonable fact finder could conclude that Kibbee and Smith helped cause the catheterization to occur.

To overcome the qualified immunity defense, plaintiff must show that at the time of the alleged violation, the constitutional right was clearly established. See Vondrak, 535 F.3d at 1204. Ordinarily, for a rule to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains." Medina, 960 F.2d at 1498. In Marshall, the Tenth Circuit found that based on the Supreme Court decision in Schmerber, the law is clearly established that a non-consensual blood test is unconstitutional absent a warrant or probable cause and exigent circumstances. See 474 F.3d at 741. By analogy, the same conclusion applies to non-consensual urine tests. Indeed, in Sanders, the Tenth Circuit relied on Schmerber in concluding that a urine sample obtained under exigent circumstances did not constitute an unreasonable search under the Fourth Amendment. See Sanders,

---

[32](...continued)
hospital only to maintain peace, and that it was in this capacity that they intervened during the catheterization procedure. See id.

In Tinius, the deputies acted solely in a community care-taking function, totally divorced from any criminal investigative function. Here, Kibbee and Smith obtained a urine sample to use in a criminal proceeding against plaintiff. The facts of this case do not support a conclusion that Kibbee and Smith acted solely in a community care-taking capacity.

167 Fed. Appx. at 725.[33]

As noted, viewed in the light most favorable to plaintiff, the record supports a finding that Kibbee and Smith helped cause the catheterization to occur to obtain a sample for criminal investigation purposes. Accepting plaintiff's version of the facts, the law is clearly established that a reasonable officer would have known that absent probable cause and exigent circumstances, such conduct constitutes an unreasonable search under the Fourth Amendment. See Schmerber, 384 U.S. at 770-71; Marshall, 474 F.3d at 741; Sanders, 167 Fed. Appx. at 725.[34] On this record, plaintiff has shown facts which demonstrate that defendants' actions violated a constitutional right which was clearly established at the time of the alleged violation. See, e.g., Elliot v. Sheriff of Rush County, Ind., 686 F. Supp.2d 840 (S.D. Ind. 2010).[35]

---

[33]     In Sanders, officers observed plaintiff driving erratically and tried to pull him over. See Sanders, 167 Fed. Appx. at 724. Plaintiff attempted to evade officers and the chase ended on foot. See id. When police caught plaintiff, they subdued him by hitting him in the face and kicking him. See id. After police restrained him, plaintiff admitted that he had swallowed drugs. See id. Because of his injuries, police transported plaintiff to a hospital, where a urine sample was obtained in the course of his treatment. See id.
        Plaintiff filed suit under Section 1983 alleging, inter alia, that officers conducted an illegal search by obtaining the urine sample. The district court dismissed the claim under 28 U.S.C. § 1915(e)(2)(B)(ii), i.e. finding it obvious that plaintiff could not prevail on the facts alleged and that it would be futile to give him an opportunity to amend. See Sanders, 167 Fed. Appx. at 724. On appeal, the Tenth Circuit affirmed. Specifically, the Tenth Circuit found that under the doctrine of exigent circumstances, plaintiff's admission that he had swallowed drugs coupled with his erratic behavior justified the warrantless search. See id. at 725.

[34]     In their motion for summary judgment, defendants do not assert that probable cause and exigent circumstances justified the search. See Defendants' Memorandum (Doc. #78) at 14-18.

[35]     In Elliot, the district court found that fact issues precluded summary judgment on plaintiff's claim that law enforcement officers violated his right to be free from unreasonable searches and seizures in connection with forced catheterization. After pulling over plaintiff for speeding, officers suspected him of possessing marijuana and DUI. See Elliot, 686 F. Supp.2d at 849-50. Plaintiff refused to consent to a chemical or blood test. See id. at 850-51. Officers thereafter obtained a search warrant which authorized them to obtain medical professional assistance

(continued...)

―――――――――――

[35](...continued)

to obtain a blood or urine sample from plaintiff and to use reasonable force to do so.  See id. at 851.
After obtaining the warrant, officers transported plaintiff to the hospital.  At the hospital, after seeing
the search warrant, plaintiff signed a consent which authorized the hospital to take a blood and/or
urine sample.  See id.  Thereafter, hospital staff drew two vials of blood and provided them to police.
See id.  Subsequently, in an attempt to give a urine sample, plaintiff drank five cups of water.
Ultimately he was unsuccessful.  See id.  Officers decided to pursue medical catheterization.  See
id.  They handcuffed plaintiff to a surgical table, pulled down his pants and held his legs in a spread-
eagle position while a nurse inserted a catheter.  See id. at 851-52.  The urine analysis showed THC
and benzodiazepines in plaintiff's system.  See id. at 852.  Officers charged plaintiff with, inter alia,
DUI.  See id.  The trial court found that officers had violated his Fourth Amendment rights,
however, and the underlying criminal proceedings were dismissed.  See id. at 853.

Plaintiff sued the officers under Section 1983 for violation of his Fourth Amendment
rights.  Plaintiff alleged, inter alia, that in procuring a urine sample through forced catheterization,
officers exceeded the scope of the search warrant and used excessive force.  See id. at 853.
Defendants moved for summary judgment on grounds that their actions were lawful and that
qualified immunity shielded them from liability.  See id. at 853.  The district court found that by
requiring plaintiff to give a urine sample after he had already provided a blood sample, officers
exceeded the scope of the warrant which authorized defendants to obtain a sample of plaintiff's
blood or urine.  See id. at 856.  The district court found that because defendants had already secured
evidence of plaintiff's possible intoxication through the blood test, it was not a situation of possible
destruction of evidence and exigent circumstances did not justify the warrantless search.  See id.
856-57.  With regard to defendants' qualified immunity claim, the district court found that the law
is clearly established that a law enforcement officer may not exceed the scope of a lawfully obtained
search warrant unless an exception to the warrant requirement applies.  See id. at 857.

The district court further found that even if officers did not exceed the scope of the
search warrant, they violated plaintiff's Fourth Amendment rights in requiring him to undergo a
forced catheterization.  See id. at 857-62.  In reaching its conclusion, the district court balanced the
following factors: (1) the extent to which the procedure may threaten the safety or health of the
individual; (2) the extent of intrusion on individual dignitary interests in personal privacy and bodily
integrity; and (3) the community interest in fairly and accurately determining guilt or innocence.
See id. at 859 (citing Schmerber, 384 U.S. at 761-62).  As to the first factor, i.e. threat to safety or
health of plaintiff, based on expert testimony that a catheter should not be used unless medically
necessary, given the fact that plaintiff had already provided blood and no doctor had ordered the
catheterization, the district court found a material fact issue whether the procedure unnecessarily
risked plaintiff's health and safety.  As to the second factor, the district court that the forced
catheterization was a "gross invasion" of plaintiff's liberty interests in personal privacy and bodily
integrity.  See id. at 859.  As to the third factor, the district court found that given the fact that
plaintiff had voluntarily given two vials of blood, the state's interest in recovering evidence of
possible drugs in plaintiff's body was not strong.  See id. at 860.  The district court concluded that
the balance of factors weighed in favor of finding a Fourth Amendment violation.  The district court

(continued...)

The burden thus shifts back to defendants to prove that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law.  See Olsen, 312 F.3d at 1312. Defendants assert that they did not cause the catheterization.  See Defendants' Memorandum (Doc. #78) at 14-18.  As noted, a material fact issue exists in this regard.  Because the record reveals an unresolved issue of fact relevant to the qualified immunity analysis, defendants are not entitled to summary judgment on this ground.  See Olsen, 312 F.3d at 1314-15; Bridges, 352 Fed. Appx. at 259-60.

4.      **Whether Defendants Are Entitled To Summary Judgment On Plaintiffs' Claim That Kibbee And Smith Violated Plaintiff's Right To Privacy Or Other Patient Rights**

Defendants assert that as a matter of law, Kibbee and Smith did not violate plaintiff's right to privacy or other patient rights and that even if they did, such rights were not clearly established.  See Defendants' Memorandum (Doc. #78) at 18-19.  In response to defendants' motion for summary judgment, plaintiff does not respond to this argument.  See Plaintiff's Response (Doc. #98) at 18-30.  On this record, defendants are entitled to summary judgment on the claim that Kibbee and Smith violated plaintiff's right to privacy or other patient rights (Count VIII).

_____

[35](...continued)

concluded that a material fact question existed as to whether officers violated plaintiff's Fourth Amendment rights.  See id. at 862.  As to defendants' claim of qualified immunity, the district court found that under clearly established law, a reasonable officer should have known that requiring plaintiff to submit to a medical catheterization, against his will and without a search warrant, constitutes an unreasonable search under the Fourth Amendment.  See id. at 863.

5.       **Whether Defendants Are Entitled To Summary Judgment Because The Supreme Court Decision In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), Bars Plaintiff's Section 1983 Claims**

Defendants assert that as a matter of law, the Supreme Court decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), bars plaintiff's Section 1983 claims against Kibbee, Smith and the City.  <u>See</u> <u>Defendants' Memorandum</u> (Doc. #78) at 19-21.  In <u>Heck</u>, the Supreme Court ruled that a claim for monetary damages under Section 1983 is not cognizable if a judgment in favor of plaintiff would effectively invalidate her underlying conviction.  <u>See</u> <u>id.</u> at 486-87.[36]  If a favorable judgment will not demonstrate the invalidity of an outstanding criminal judgment, the Court should allow her to proceed absent some other bar to suit.  <u>See</u> <u>id.</u> at 487.[37]

Defendants assert that a judgment for plaintiff on her Section 1983 claims would necessarily

---

[36]       In <u>Heck</u>, plaintiff, a state inmate convicted of manslaughter, alleged that in his state criminal proceedings, prosecutors and police conducted an unlawful investigation, knowingly destroyed exculpatory evidence and caused an illegal and unlawful voice identification procedure to be used at trial.  <u>See</u> <u>id.</u> at 479.  The district court dismissed the action without prejudice, finding that it raised issues which directly implicated the legality of plaintiff's confinement.  <u>See</u> <u>id.</u>  On appeal, the Seventh Circuit affirmed.  The Seventh Circuit found that plaintiff's claims should be classified as seeking habeas corpus relief because if he prevailed, the state would be obliged to release him.  <u>See</u> <u>id.</u> at 479-80.  The Supreme Court granted certiorari and affirmed.  It noted that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement, <u>see</u> <u>id.</u> at 471 (citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973)), and that a tort claim under Section 1983 is not the appropriate vehicle for challenging the validity of outstanding criminal judgments.  <u>See</u> <u>id.</u> at 486.  The Supreme Court held that to recover under Section 1983 for an allegedly unconstitutional conviction or imprisonment, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254.  <u>Id.</u> at 486-87.

[37]       In <u>Heck</u>, the Supreme Court noted that if a state criminal defendant brings a federal civil rights action during the pendency of her state criminal proceedings, abstention may be appropriate under <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).  <u>See</u> <u>Heck</u>, 512 U.S. at 487 n.8.

imply that her DUI conviction is invalid.[38]  Specifically, defendants assert that the jury based its

conviction on the blood sample which OMC nurses took at the hospital and that at the criminal trial,

plaintiff argued that nurses took the blood sample against her wishes and in violation of her

constitutional rights.  See Defendants' Memorandum (Doc. #78) at 20.  As an initial matter,

defendants did not include these facts in their statement of facts, see id. at 3-7, so they are not part

of the record before the Court.[39]  See D. Kan. Rule 56.1(a) and (d).  Moreover, the mere fact that

prosecutors introduced the blood sample in plaintiff's criminal proceedings does not necessarily

render her Section 1983 claims non-cognizable.  In Heck, the Supreme Court noted that because of

doctrines like independent source, inevitable discovery and especially harmless error, a suit for

Section 1983 damages may lie even if the challenged search produced evidence that was introduced

in a state criminal trial which resulted in plaintiff's conviction.  See Heck, 512 U.S. at 487 n.7.

Thus, if the jury heard other, independent evidence which would support the DUI conviction, a

finding that the blood sample was unlawfully obtained would not necessarily render the conviction

invalid.  See, e.g., Beck v. City of Muskogee Police Dept., 195 F.3d 553, 560 (10th Cir. 1999);

Pearson v. Weischedel, 349 Fed. Appx. 343, 347 (10th Cir. 2009) (claim for damages which would

invalidate only one basis for conviction cognizable under Section 1983 so long as other independent

grounds support conviction).  Moreover, even if Heck barred plaintiff's claim that defendants

---

[38]     Defendants do not specify which Section 1983 claims the DUI conviction would
preclude.  See Defendants' Memorandum (Doc. #78) at 20-21.

[39]     In their statement of facts, defendants state that at the criminal trial, Karlin testified
that he ordered a blood test for plaintiff which revealed that immediately following arrest, her blood
alcohol content was .153, nearly double the legal limit of .08.  See Defendants' Memorandum
(Doc. #78) at 7, ¶ 39.  Defendants provide no information regarding (1) what other evidence, if any,
supported the jury's conclusion; (2) what plaintiff argued at trial; or (3) whether the trial court made
any specific findings in this regard.

unlawfully obtained the blood sample, it would not necessarily preclude her claims that defendants

used excessive force in obtaining the blood sample and/or unlawfully obtained a urine sample.[40]

See, e.g., Martinez v. City of Alburquerque, 184 F.3d 1123, 1125 (10th Cir. 1999);  Robbins v.

Chronister, No. 97-3489-JWL, 2000 WL 1389616, at *4 (D. Kan. July 28, 2000) (Heck no bar to

excessive force claim).  On this record, defendants have not shown as a matter of law that a

judgment for plaintiff on her Section 1983 claims would necessarily imply that her DUI conviction

is invalid.  Defendants are not entitled to summary judgment on this ground.

Defendants assert that a judgment for plaintiff on her Section 1983 claims would necessarily

imply that her state court conviction for battery on a law enforcement officer is invalid.[41]

Defendants assert that because a claim that officers used excessive force is a defense to the crime

of battery on a law enforcement officer, a judgment in favor of plaintiff on her Section 1983 claims

would necessarily imply that her state law conviction is invalid.  Specifically, defendants assert that

at the criminal trial, Kibbee and Smith testified that plaintiff battered them, causing visible injuries,

and plaintiff testified that she committed the acts in self defense.  Under Kansas law, if a person acts

in self defense, she is justified in committing battery on a police officer.  See K.S.A. § 21-3211(a);

State v. Hieskell, 8 Kan. App.2d 667, 672, 666 P.2d 207, 211-12 (1983).[42]

---

[40]     As discussed supra text III. B. 1. b., to the extent that plaintiff asserts separate claims
that Kibbee and Smith used excessive force in obtaining blood and urine samples (as opposed to
claims that the forced blood and urine draws constitute unconstitutional searches) (arguably part of
Count V), defendants are entitled to summary judgment.

[41]     Defendants do not specify which Section 1983 claims the battery on a law
enforcement officer conviction would preclude.  See Defendants' Memorandum (Doc. #78) at 20-21.

[42]     K.S.A. § 21-3211(a) states as follows:

A person is justified in the use of force against another when and to the extent it

(continued...)

Defendants present some evidence that at the criminal trial, plaintiff testified that in committing acts of battery against Kibbee and Smith, she acted in self defense.  See Defendants' Memorandum (Doc. #78) at 7, ¶ 38.  The record is silent, however, as to when the acts of battery occurred.  In the argument section of their memorandum in support of their summary judgment motion, defendants suggest that the jury relied on evidence that plaintiff injured Kibbee and Smith in the ambulance.  See id. at 20 (plaintiff's conviction for battery on law enforcement officer based on evidence that she injured Kibbee and Smith while struggling against them in ambulance).  If so, Heck would apply to plaintiff's claim that defendants used excessive force against her in the ambulance, see Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996), but not necessarily to her claims that defendants used excessive force at the hospital.  See Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008); Pratt v. Giroir, No. 07-1529, 2008 WL 975052, at *5 (E.D. La. April 8, 2008) (Heck does not preclude excessive force claim temporally and conceptually distinct from factual basis for conviction).  In other words, if the jury convicted plaintiff based on her conduct in the ambulance, a finding in this action that the officers used excessive force against her at the hospital would not necessarily imply that her conviction is invalid.  See Bush, 513 F.3d at 498.  On this record, the Court cannot determine which facts comprised the basis for the jury's conviction for battery on a

---

[42](...continued)
appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

K.S.A. § 21-3211(a).  A defendant charged with battery on a police officer is entitled to a jury instruction that she acted in self defense if she presents evidence that (1) she sincerely and honestly believed that force was necessary to defend herself; and (2) a reasonable person in her circumstances would have perceived that self defense was necessary.  See State v. Henderson, No. 90323, 2004 WL 1542323, at *3 (Kan. App. July 9, 2004) (citing State v. Lutter, 27 Kan. App.2d 858, 860, 10 P.3d 16, 19, rev. denied, 270 Kan. 902 (2000)).

law enforcement officer.  Defendants are not entitled to summary judgment on this ground.  <u>See</u>,

<u>e.g.</u>, <u>Neel v. Abrahamson</u>, No. 07-530-KI, 2008 WL 539221, at *5  (D. Or. Feb. 27, 2008).

**6.      Whether The City Is Entitled To Summary Judgment Because Kibbee And Smith Did Not Violate Plaintiff's Constitutional Rights**

Defendants assert that as a matter of law, the City is not liable because Kibbee and

Smith did not violate plaintiff's constitutional rights.  <u>See Defendants' Memorandum</u> (Doc. #78) at

21.  As discussed, the Court finds that to the extent that plaintiff asserts separate claims that Kibbee

and Smith used excessive force in obtaining blood and urine samples (as opposed to claims that the

forced blood and urine draws constitute unconstitutional searches) (arguably part of Count V), the

Court grants summary judgment in favor of defendants.  In addition, the Court grants summary

judgment in favor of defendants on plaintiff's claims that Kibbee and Smith (1) conducted an

unconstitutional strip search (part of Count V) and (2) violated plaintiff's right to privacy or other

patient rights (Count VIII).  To the extent plaintiff asserts claims against the City based on these

actions, the City is entitled to summary judgment.

**7.      Whether Defendants Are Entitled To Summary Judgment Because Plaintiff's State Law Battery Claims Are Time Barred**

Defendants assert that as a matter of law, plaintiff's state law battery claims are time

barred.  <u>See Defendants' Memorandum</u> (Doc. #78) at 21-22.  In Count II, plaintiff asserts state law

claims for battery against Kibbee and Smith.  <u>See Second Amended Complaint</u> (Doc. #160) at 9-

10.[43]  K.S.A. § 60-514 imposes a one-year limitations period for claims of battery.  <u>See</u> K.S.A. § 60-

514(b).  Here, the alleged acts of battery occurred on April 17, 2008.  Plaintiff filed her complaint

---

[43]      Plaintiff also asserts battery claims against Davenport and Wheeler.  <u>See</u> <u>Second Amended Complaint</u> (Doc. #160) at 9-10.  Plaintiff does not assert battery claims against the City.  <u>See</u> <u>id.</u>

almost two years later, on March 8, 2010.  Unless another limitations period applies, it appears that

the statute of limitations bars plaintiff's battery claims.[44]

Plaintiff contends that a three-year limitations period applies under K.S.A. § 60-512(2).  See

Plaintiff's Response (Doc. #98) at 27-28.  In McCormick v. City of Lawrence, 278 Kan. 797, 104

P.3d 991 (2005), the Kansas Supreme Court found that to the extent plaintiff asserts claims for

violation of a substantive right created by statute and not recognized at common law, K.S.A. § 60-

512(2) imposes a three-year limitations period.[45]  178 Kan. at 798-99, 104 P.3d at 992.

Plaintiff asserts that her battery claims are based on K.S.A. §§ 22-2521 and 22-2522.  Those

statutes set forth requirements for strip searches and body cavity searches.[46]  K.S.A. § 22-2523

---

[44]      To the extent plaintiff asserts battery claims against the City, K.S.A. § 12-105b(d)
would extend the limitations period by, at most, an additional 210 days.  On April 17, 2009, plaintiff
filed a notice of claim with the City.  Pursuant to Section 12-105b(d), if the City did not act on the
claim within 120 days, plaintiff would have an additional 90 days, or until November 13, 2009, to
file suit.  Here, plaintiff did not file suit until March 8, 2010, almost four months after any extended
limitations period could apply under K.S.A. § 12-105b(d).

[45]      Section 60-512 provides a three-year limitations period for "[a]n action upon a
liability created by a statute other than a penalty or forfeiture."  K.S.A. § 60-512(2).

[46]      With regard to strip searches, Section 22-2521 states, in part, as follows:

(a) No person detained or arrested solely for the violation of a statute, resolution or
ordinance involving a traffic, regulatory or nonviolent misdemeanor offense shall be
strip searched unless there is probable cause to believe that the individual is
concealing a weapon or controlled substance.

(b) Every strip search conducted by law enforcement officers or employees of a law
enforcement agency or department shall be conducted by persons of the same sex as
the person being searched and shall be conducted so that the search cannot be
observed by any person other than the persons conducting the search, unless the right
to privacy is waived by the person being searched. * * *

K.S.A. § 22-2521.

(continued...)

provides liability for violations of Sections 22-2521 and 22-2522.[47]  In Count II, however, plaintiff does not assert claims for violations of Sections 22-2521 and 22-2522.  See Second Amended Complaint (Doc. #160) at 9-10.  Rather, she alleges the elements of common law battery.  See id.; see also Bowling v. United States, — F. Supp.2d —, 2010 WL 3724856, at *9 (D. Kan. Sept. 17, 2010) (Kansas law elements of battery are (1) touching or striking plaintiff; (2) unprivileged contact;

---

[46](...continued)
        With regard to body cavity searches, Section 22-2522 states as follows:

(a) A body cavity search shall be conducted only under the authority of a search warrant specifically authorizing a body cavity search.

(b) Every body cavity search shall be conducted by a licensed physician or registered nurse. No person authorized by this subsection to conduct a body cavity search or any person assisting in the performance of such search shall be liable in any civil or criminal action when such search is performed in a reasonable manner according to generally accepted medical practices in the community where performed.

(c) Law enforcement officers may be present during the search, but only those of the same sex as the person on whom a body cavity search is being conducted.

K.S.A. § 22-2522.

[47]        Section 22-2523 states, in part, as follows:

(a) If liability is established in any civil action brought under the Kansas tort claims act for violation of subsections (a) or (b) of K.S.A. 22-2521, or K.S.A. 22-2522, the plaintiff shall be entitled to an amount equal to the sum of the following:

(1) Actual damages sustained by the plaintiff;

(2) punitive damages, if the violation was willful, wanton or malicious;

(3) the costs of the action, at the discretion of the court; and

(4) a civil penalty in an amount set by the court of not more than $2,000 for each violation.  * * *

(3) intention to bring about contact or apprehension of contact; and (4) harmful or offensive contact). Specifically, plaintiff alleges that while she was handcuffed, defendants intentionally initiated offensive conduct, including pinning down her arms, legs and torso in a violent and offensive manner, choking her, cutting and ripping her clothes off her body, inserting a needle into her body, forcibly collecting her blood, and physically forcing a catheter into her body to compel collection of her urine.  See Second Amended Complaint (Doc. #160) at 9-10.  Because plaintiff asserts common law claims for battery, K.S.A. § 60-514 imposes a one-year limitations period. Accordingly, defendants are entitled to summary judgment on plaintiff's claims for battery (Count II).

**IT IS THEREFORE ORDERED** that plaintiff's Memorandum In Support Of Plaintiff's Motion For Partial Summary Judgment Against Defendants Kibbee And Smith (Doc. #53) filed July 27, 2010 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion For Summary Judgment (Doc. #77) filed August 24, 2010 be and hereby is **SUSTAINED in part.**  To the extent that plaintiff asserts separate claims that Lee R. Kibbee and Wesley H. Smith used excessive force in obtaining blood and urine samples (as opposed to claims that the forced blood and urine draws constitute unconstitutional searches) (arguably part of Count V), the Court grants summary judgment in favor of defendants.  In addition, the Court grants summary judgment in favor of defendants on the claims that (1) Kibbee and Smith conducted an unconstitutional strip search of plaintiff (part of Count V); (2) Kibbee and Smith violated plaintiff's right to privacy or other patient rights (Count VIII); and (3) Kibbee and Smith are liable for battery under state law (Count II).  To the extent plaintiff asserts claims against the City based on these actions by Kibbee and Smith, the Court grants summary

judgment in favor of the City.  All other claims remain in the case.

Dated this 1st day of March, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge